Karl RITZER, Plaintiff,

v.

NATIONAL ORGANIZATION OF INDUSTRIAL TRADE UNIONS INSURANCE TRUST FUND HOSPITAL, MEDICAL, SURGICAL HEALTH BENEFIT, Defendant.

No. 91 C 4145.

United States District Court, E.D. New York.

Nov. 30, 1992.

Virag & Virag, (Thomas J. McCarthy, of counsel), New York City, for plaintiff.

Kreisberg & Maitland, P.C. (Laura E. Castelli, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Karl Ritzer brought this action in the Civil Court of the City of New York, County of Queens, against the National Organization of Industrial Trade Unions Insurance Trust Fund Hospital, Medical, Surgical Health Benefit (the "Fund") alleging a wrongful denial by the Fund of his medical benefit claim and seeking "damages" of $25,000.

Defendant removed the action to this court on the ground that the Fund is an employee welfare benefits plan within the meaning of section 3(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, so that the Federal district courts had

exclusive original jurisdiction over the dispute. 29 U.S.C. § 1132(e).

The Fund now moves for summary judgment dismissing the complaint either because Ritzer failed to exhaust administrative remedies or because the Fund's denial of Ritzer's claim was not arbitrary and capricious. In the alternative, the Fund requests that the case be removed from the mandatory court-annexed arbitration program.

This is one of many similar actions against the Fund filed in or transferred to the Eastern District of New York in the past two years. *See, e.g., Brookdale Hospital v. Nat'l Org. of Indus. Trade Unions Fund,* 91 CV 3737 (Korman, J.); *Buckley v. Nat'l Org. of Indus. Trade Unions Fund,* 91 CV 1412 (Weinstein, J.); *Coviello v. Nat'l Org. of Indus. Trade Unions Fund,* 92 CV 875 (Glasser, J.); *D'Amico v. Nat'l Org. of Indus. Trade Unions Fund,* 90 CV 3090 (Hurley, J.); *East Rockaway Nursing Home v. Nat'l Org. of Indus. Trade Unions Fund,* 92 CV 3072 (Nickerson, J.); *Falco v. Nat'l Org. of Indus. Trade Unions Fund,* 91 CV 2641 (Amon, J.); *Labarsky v. Nat'l Org. of Indus. Trade Unions Fund,* 90 CV 2753 and 90 CV 2754 (Dearie, J.); *Lawrence v. Nat'l Org. of Indus. Trade Unions Fund,* 91 CV 3011 (Dearie, J.); *Maimonides Medical Center v. Nat'l Org. of Indus. Trade Unions Fund,* 92 CV 4456 (Nickerson, J.); *Nepomniashy v. Nat'l Org. of Indus. Trade Unions Fund,* 90 CV 144 (Sifton, J.); *Rollo v. Nat'l Org. of Indus. Trade Unions Fund,* 91 CV 2912 (Weinstein, J.).

No doubt numerous similar disputes have been brought in the Southern District of New York. *See, e.g., DiRoma v. Nat'l Org. of Indus. Trade Unions Fund,* No. 91–653, 1992 WL 123177, 1992 U.S.Dist. LEXIS 7698 (S.D.N.Y. May 27, 1992); *Seff v. Nat'l Org. of Indus. Trade Unions Fund,* 781 F.Supp. 1037 (S.D.N.Y.1992).

**I**

The essential facts of this case may be quickly told. During 1990 and for at least a portion of 1991, Ritzer was an employee of the Superb Cutting Corporation ("Su-

perb"). During this period the Fund was obligated to provide medical insurance to each of Superb's regular full-time employees who worked at least 21 hours a week. Both Superb and Ritzer maintained that, at all relevant times, Ritzer was eligible to participate in the plan.

In February 1991 Ritzer's physician advised him to undergo total hip replacement surgery. After getting a second concurring medical opinion, Ritzer received an oral confirmation from the Fund that the expenses for this operation would be paid.

In March 1991, in the course of pre-admittance registration, Ritzer reportedly informed a hospital employee that he was self-employed at a Hagen Dazs store and was insured by the Fund. The hospital called the Fund, which discovered that Ritzer's insurance was based on his employment by Superb. To investigate this purported discrepancy, the Fund asked Superb to send a copy of its quarterly state payroll tax report so that the Fund could verify Ritzer's eligibility.

Superb sent the form to the Fund in late April 1991. The Fund seemingly determined that Ritzer was an eligible employee by comparing the payroll report with its list of Superb's participating employees. But the Fund says it discovered in the process that another individual not then making a benefit claim but insured by the Fund was ineligible. The Fund also says that five others should have been insured, although the basis of this contention is unclear since most or all of these employees appear to be ineligible part-time employees. Nevertheless, based on the alleged fact that Superb had violated the Fund's eligibility rules with respect to one or more individuals, the Fund terminated its insurance of Superb's employees.

Meanwhile Ritzer was hospitalized for eight days, underwent surgery, and incurred expenses totalling $21,031.50. The Fund denied the claim on May 23, 1991.

**II**

The court may dispose of this case at the threshold if, as defendant contends, Ritzer

failed to exhaust his administrative remedies.

Section 503(2) of ERISA provides that every employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The Second Circuit has construed this section as depriving federal courts of jurisdiction over benefit disputes until the decision of the fiduciary is final. *Haeberle v. Bd. of Trustees of Buffalo Carpenters Health–Care, Dental, Pension and Supplemental Funds*, 624 F.2d 1132, 1135 (2d Cir.1980).

█ This requirement prevents ERISA disputes from over-taxing the federal courts, promotes a non-adversarial dispute resolution process, decreases the costs and time of claims settlement, and establishes a complete record for use by the reviewing court. Accordingly ERISA plans are granted broad discretion in establishing and implementing benefit dispute review procedures.

But broad discretion is not complete discretion. Regulations promulgated by the Department of Labor require the trustees of an ERISA plan expeditiously to review its administrator's denial of a benefit claim if a claimant timely requests such review. The regulations provide that:

> (h) Decision on review. (1)(i) A decision by an appropriate named fiduciary shall be made promptly, and shall not be made later than 60 days after the plan's receipt of a request for a review, unless special circumstances ... require an extension of time....
>
> (2) If such an extension of time is required because of special circumstances, written notice of the extension shall be furnished to the claimant prior to the commencement of the extension....
>
> (4) The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section. If the decision on review

is not furnished within such time, the claim shall be deemed denied on review. 29 C.F.R. § 2560.503–1(h) (1990).

█ The record shows that Ritzer exhausted his administrative appeal. By a letter dated June 6, 1991, Ritzer's attorney asked the Fund to review its denial of Ritzer's claim. Some eight weeks later, by a letter dated July 31, 1991, the Fund asked the attorney to submit a release signed by Ritzer so that it could provide information concerning Ritzer's participation in the Fund. Presumably because the attorney had requested a review and not information, he ignored this request. After waiting more than 60 days, Ritzer brought this action in Queens County Civil Court on August 15, 1991. By that time the Fund's trustees had neither reviewed the decision of its administrator nor provided Ritzer with a written notice of an extension due to special circumstances.

The court deems, pursuant to 29 C.F.R. § 2560.503–1(h)(4), that Ritzer's claim was denied on review. Since Ritzer pressed his appeal to a final resolution, this court has jurisdiction. *See McRae v. Seafarers' Welfare Plan*, 726 F.Supp. 817, 820 (S.D.Ala. 1989), *rev'd in part on other grounds*, 920 F.2d 819 (11th Cir.), *reh'g denied*, 931 F.2d 901 (11th Cir.1991) (finding that plaintiff had exhausted remedies by twice requesting review of ERISA benefit denial without receiving response).

### III

The Fund says that it denied Ritzer's claim because his employer had engaged in "selective participation" and because Ritzer was not eligible to participate in the plan. The Fund contends that this court may displace its decision only if it acted arbitrarily and capriciously.

### A

The court considers first the standard of review it should apply to the Fund's decision.

Article VI, section 1 of the Trust Agreement establishing the Fund provides that "[t]he Trustees shall have full authority to

determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the Employees and their dependents."

■ Where, as here, an ERISA plan provides that the plan's trustees have discretionary authority to determine eligibility requirements and to construe terms, a reviewing court adopts a deferential standard of review. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). "A trustee may be given power to construe disputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." *Id.*

Since *Firestone,* the Circuit Courts of Appeal have divided over the standard of review. Some say that there must be "arbitrary and capricious" action. Others say that "abuse of discretion" is enough. Still others think there is no real difference between the two. *See DiRoma v. Nat'l Org. of Indus. Trade Unions Insurance Fund,* No. 91–653, 1992 WL 123177, at *7, 1992 U.S.Dist. LEXIS 7698, at *19–24 (S.D.N.Y. May 27, 1992) (describing the split).

The Second Circuit has not yet examined this post-*Firestone* debate. But it has noted in a terse "see also" parenthetical that the arbitrary and capricious standard applies where trustees have full authority to determine and interpret eligibility rules. *Reichelt v. Emhart Corp.,* 921 F.2d 425, 431 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991).

It makes no material difference which of the two standards is applied on the present motion. Consistent with the Second Circuit's prevailing formulation, the court examines the Fund's denial of Ritzer's claim to determine whether the denial was arbitrary and capricious.

## B

■ The first ground on which the Fund says it denied Ritzer's claim was that Superb had engaged in "selective participation."

On January 17, 1989 the Fund's trustees unanimously approved a rule that, "[t]he Administrator shall have the right to remove any Employer group ... where it has been determined that the Employer has engaged ... in selective participation ... and all pending claims will not be honored."

The Fund uses the term "selective participation" to describe any circumstance in which an employer insures one or more ineligible employees, fails to insure every eligible employee, or engages in both practices. The Fund reasons that allowing some employees to opt in and others to opt out of the Fund might have an unanticipated adverse actuarial effect since persons who expect to incur high medical costs are likely to opt into the plan while others who expect to incur low medical costs are likely to opt out. A prohibition of uncontrolled participation in the plan is reasonable and not here in dispute.

Presumably, before the 1989 rule was adopted the Fund's administrator could only deny a claim filed by an ineligible person. Under the new rule, the administrator has unconstrained authority to terminate an entire employer group and to deny all pending claims, even from eligible employees, if the administrator determines that the employer had listed as eligible a single ineligible person.

Such a rule gives the administrator enormous discretionary opportunity to accept payments from employers as long as claims are small and to deny claims should a single employee incur a substantial cost. It rewards an ERISA plan that delays payment of legitimate claims when the plan learns in a related or unrelated investigation that the employer had cheated or been careless. And it places every insured individual, together with every health care provider who relies on that insurance, at risk of non-reimbursement due to circumstances entirely beyond their knowledge or control.

If such an unconstrained rule serves any rational purpose, and the court doubts that it does, it can only serve as an inducement to employers strictly to obey the Fund's eligibility rules. But to serve as an induce-

ment, the Fund must clearly inform employers of the rule.

By Memorandum and Order dated October 21, 1992, the court directed the Fund to submit papers showing each rule and regulation adopted by the trustees regarding employee eligibility, the date of adoption by the trustees, and the manner and date in which plaintiff and his employer, Superb, were informed of each such rule and regulation. The Fund has had ample opportunity to establish whether it informed Superb of the *in terrorem* nature of its selective participation rule.

The papers submitted before and after the October order show that Superb was never informed that pending claims from eligible employees would be denied if the Fund subsequently learned that Superb had engaged in selective participation.

The Fund says it informed Superb of the rule on January 17, 1989. But this cannot be correct. Ritzer's employer did not participate in the plan until March 1, 1989.

The Fund says it sent Superb a Summary Plan Description which explains on pages 7 and 8 that an employer may be permanently disqualified if it engages in selective participation. But the Summary Description does not say that all pending claims from eligible employers would be denied.

In the minutes to a Fund meeting held on June 29, 1990, the Fund's chairman stated that if the Fund cannot verify a person's employment, it would terminate that person's coverage. But he did not then threaten to deny a claim by an eligible employee in the event the employer attempted to insure an ineligible individual.

On December 14, 1990, the Fund's chairman sent a memorandum to plan administrators which stated that:

This official notice will confirm the ... Fund's position (as heretofore discussed) that it cannot legally maintain hospital and medical coverage or participate in the welfare fund generally for individuals who are not employees of contributing or participating employers to the fund.

Any erroneous claims mailed to the Fund's office for processing on behalf of such individuals will be denied!

This memorandum suggests that claims by eligible participants will not be denied.

To deny Ritzer's claim based upon an unannounced or inadequately publicized *in terrorem* rule serves no rational purpose. Thus, the Fund acted arbitrarily and capriciously in denying his claim on this ground.

C

The second ground on which the Fund says it denied Ritzer's claim was that he was not eligible to participate in the plan when he incurred the expense.

To be eligible according to the Summary Plan Description, one "must be an active regular employee who works at least 21 hours per week" at the time of enrollment. One becomes ineligible if one is "no longer actively working as a regular full-time employee (at least 21 hours per week)." Depending on the reason for termination, a participant may be able to continue benefits on a "self-pay basis," as described in "COBRA Section 30" of the Summary Plan Description. The court cannot determine the relevance of section 30 since the Fund failed to submit a copy of it, despite the court's October order.

The court could rapidly resolve this dispute if it could answer a simple question of fact: was Ritzer "an active regular employee who work[ed] at least 21 hours per week" during April 1991? If so, the Fund's denial of his claim was arbitrary and capricious. If not, the Fund's denial of his claim should be upheld, unless Ritzer was wrongfully denied an opportunity to continue his coverage under the Fund's COBRA provision.

But the court cannot answer this question based upon the papers presented. On April 29, 1991, the day the Fund decided to terminate its coverage of Superb's employees, the Fund received a payroll tax report showing that Ritzer earned $9,750 for the quarter ending March 31, 1991. The Fund says it believed this report was accurate at least with respect to all other persons listed on it. Therefore, if in fact the Fund decid-

ed on April 29, 1991 that Ritzer was not a regular employee who worked less than 21 hours a week, that decision was based on little or no probative evidence and was arbitrary and capricious.

After this action was brought the Fund submitted Ritzer's deposition testimony in which he said he worked "part time" for Superb in April, 1991. But the testimony does not attempt to establish whether he was a "regular" employee or whether he worked 21 hours per week. Ritzer submitted an affidavit in which he said he was a "full-time *bona fide* employee" in April, 1991; he also provided a W-2 Wage and Tax Statement for 1991 tending to support his statement.

The court finds a genuine issue of material fact as to whether the Fund's denial of Ritzer's claim based on this second ground was arbitrary and capricious. The Fund's motion for summary judgment is denied.

Neither party has submitted an affidavit or other reliable evidence from Superb addressing whether Ritzer was "a regular employee who works at least 21 hours per week" in April 1991. The court will consider a motion for summary judgment by plaintiff if he can submit such evidence in order to "show that there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c).

### IV

Defendant has asked that the case be removed from the mandatory court-annexed arbitration program established by the Local Arbitration Rule of the Eastern District of New York. Rule 3A requires the Clerk of Court to designate for compulsory arbitration all civil cases, with certain exceptions not relevant here, "wherein money damages only are being sought in an amount not in excess of $100,000."

Defendant argues that plaintiff has asked the court to order the defendant to do the very thing to which he is entitled, that is, to pay his medical expenses, and that this request is thus for declaratory judgment and specific performance in the form of monetary relief, not for "money damages" which is a substitute remedy.

The court grants defendant's request, but not for the reason it provides.

### A

The Local Arbitration Rule was first promulgated in 1986 as part of a pilot program to explore whether mandatory non-binding arbitration conducted at the outset of litigation would encourage a prompt, informal and inexpensive resolution of civil cases. *See* H.Rep. No. 889, 100th Cong., 2d Sess. 30–33 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982, 5991–5994 (hereinafter the "House Report").

The Local Rule is currently authorized by Title II of the Judicial Improvements and Access to Justice Act of 1988, 28 U.S.C. § 651 *et seq.* The relevant enabling section provides that designated district courts, including the Eastern District of New York, may refer civil cases to mandatory arbitration "if the relief sought consists only of *money damages* not in excess of $100,000 or such lesser amount as the district court may set." 28 U.S.C. § 652(a)(1) (emphasis added).

On its face section 652 limits mandatory arbitration to a class of civil cases in which the dollar amount in controversy is small and in which neither injunctive nor declaratory relief is sought. As would be expected, this class of cases is especially well-suited for arbitration. With relatively less money at issue, the parties have a strong incentive to reach the quick and inexpensive resolution that arbitration can provide. With relief reduced solely to a dollar amount, the arbitrator can readily fashion a remedy. Indeed the one type of civil case most suitable for arbitration is an action solely demanding payment on a performed contract or insurance policy because the arbitrator can instantly determine the appropriate monetary award.

In light of the statute's self-evident purpose, defendant's limiting construction makes no sense. Congress would hardly permit arbitration of actions seeking damages when a contract is not performed, yet disallow arbitration of contract actions seeking payment when plaintiff has fully

performed. If defendant's argument is accepted, this second group of cases must be excluded from the program since such plaintiffs can be described as merely seeking specific performance. Neither Congress nor the judges of the Eastern District who promulgated the Local Arbitration Rule would have intended such disparate and arbitrary treatment of similar civil cases.

Moreover, the legislative history provides no reason to accept defendant's construction of the statute. *See* the House Report; *Hearing on Court-Annexed Arbitration and Experimentation Before the Subcomm. on Courts, Civil Liberties and the Administration of Justice of the House Comm. on the Judiciary,* 99th Cong., 2d Sess. (1987) (cited by and relied upon by the 100th Congress in its House Report).

Nevertheless defendant urges the court to be guided by the Supreme Court's construction of "money damages" in *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). But *Bowen* provides no help. There, the Supreme Court merely sought to determine whether Congress intended federal courts to have jurisdiction in a dispute between the Secretary of Health and Human Services and a State when the Secretary refused to reimburse the State for certain classes of Medicaid expenses. The Court held that section 702 of the Social Security Act, denying district court jurisdiction over claims for "money damages" from federal agencies, did not bar a district court from ordering the Secretary to reimburse the State. The Court there interpreted the term "money damages" in light of Congress's purpose in enacting section 702.

Even if this court accepts defendant's view that it should construe the statute and rule solely based on their "plain meaning," and the *Bowen* Court did not place great weight on that basis, this court cannot agree that the Local Arbitration Rule's limitation to cases solely seeking money damages "plainly" excludes Ritzer request to be compensated for the medical expenses he incurred. Indeed if Ritzer personally paid the hospital because the Fund refused,

the reimbursement he now seeks is not, as defendant contends, "the *exact* thing to which he deems himself entitled" (emphasis in defendant's brief). The exact thing Ritzer wanted was for the Fund to pay the hospital directly.

The court rejects the Fund's interpretation of Local Arbitration Rule 3A.

### B

The court nevertheless grants the Fund's request to remove the case from the court-annexed arbitration program.

As noted above the program was intended to expedite the resolution of relatively simple, fact-based controversies. An arbitrator can decide as well as a court, for example, whether a defendant struck a plaintiff or whether a plaintiff performed a contractual obligation.

But a dispute, as here, over whether an ERISA plan's trustees acted in an arbitrary and capricious manner will rarely be so simple. Such disputes, in which a defendant previously acted as a tribunal vested with quasi-agency decision-making authority, blend issues of fact with issues of law and are thus unsuited for arbitration.

While the Local Arbitration Rule does not explicitly authorize the court to remove an individual case from the arbitration program, the court finds such authority inhering in its discretionary power sensibly to manage its own caseload. In any event, plaintiff has not objected to defendant's request to remove the case.

### Conclusion

Plaintiff exhausted his administrative appeal and the court has jurisdiction to hear this dispute.

Defendant's motion for summary judgment is denied. The court finds on its own summary judgment motion that the Fund's denial of Ritzer's claim based on Superb's "selective participation," in these circumstances, was arbitrary and capricious. The court further finds a genuine issue of material fact as to whether the Fund acted arbitrarily and capriciously in finding Ritzer individually ineligible to participate in

the Fund in April 1991. Upon an adequate showing of fact, plaintiff may move for summary judgment.

Defendant's request to remove the case from the mandatory court-annexed arbitration program is granted.

So ordered.