The ESTATE OF Karl RITZER by its
Proposed Administratrix, Marion
RITZER, Plaintiff,

v.

NATIONAL ORGANIZATION OF INDUS-
TRIAL TRADE UNIONS INSURANCE
TRUST FUND HOSPITAL, MEDICAL,
SURGICAL HEALTH BENEFIT, De-
fendant.

No. 91 CV 4145.

United States District Court,
E.D. New York.

May 24, 1993.

Virag & Virag (Joan S. Tancer, of counsel), New York City, for plaintiff.

Kreisberg & Maitland, P.C. (Laura E. Castelli, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Defendant National Organization of Industrial Trade Unions Insurance Trust Fund (the Fund) moves pursuant to Local Civil Rule 3(j) to reargue a motion decided by this court on November 30, 1992, granting partial summary judgment to plaintiff Karl Ritzer (now deceased). The court assumes familiarity with its previous memorandum and order. *Ritzer v. Nat'l Org. of Indus. Trade Unions Fund,* 807 F.Supp. 257 (E.D.N.Y.1992).

In its earlier opinion the court noted that the Fund, an employee welfare benefit plan organized under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.,* had been named as defendant in eleven cases filed since 1990 in the Eastern District of New York, and in at least two cases in the Southern District of New York. In the six months since that decision was issued, the Fund has been named as defendant or third party defendant in five additional cases in this district. *Lutheran Medical Center v. Nazi,* 92 CV 6009 (Weinstein, J.); *Capizzi v. Verdi,* 93 CV 452 (Spatt, J.); *De Angelis v. Verdi,* 93 CV 453 (Spatt, J.); *Rich v. Employees Health,* 93 CV 584 (Spatt, J.); *Ledwith Oil Co., Inc. v. National Org. of Indus. Trade Unions Fund,* 93 CV 1694 (Nickerson, J.). *See also Protocare of Metro. New York v. National Org. of Indus. Trade Unions Fund,* 92 CV 5581 (Stanton, J.) (S.D.N.Y.).

## I

This court held in its previous opinion that the Fund had arbitrarily and capriciously denied Ritzer's claim for medical benefits based on an "unannounced or inadequately publicized *in terrorem* rule" designed to discourage "selective participation." *Ritzer v. National Org. of Indus. Trade Unions,* 807 F.Supp. 257, 262 (E.D.N,Y.1992). Under the rule the Fund may, in its apparently unca-bined discretion, deny pending health benefit claims made by eligible plan participants if the Fund determines that the participant's employer has insured one or more ineligible employees or has neglected to insure every eligible employee.

The court suggested that such a rule, whether well publicized or not, did not appear to serve a rational purpose and, therefore, would be arbitrary and capricious regardless of its implementation. But "[i]f such an unconstrained rule serves any rational purpose, and the court doubts that it does, it can only serve as an inducement to employers strictly to obey the Fund's eligibility rules.... [T]o serve as an inducement, the Fund must *clearly* inform employers of the rule." *Id.* at 261–62 (emphasis added).

The court further observes that the Fund failed to satisfy statutory and regulatory requirements governing the disclosure of material information to ERISA plan participants. A central feature of ERISA is that plan participants must receive a summary plan description, written in a manner calculated to be understood by the average plan participant, that describes, among other things, circumstances which may result in the loss of benefits that, otherwise, a plan participant might reasonably expect to receive. 29 U.S.C. §§ 1022(a)(1), 1022(b); 29 C.F.R. § 2520.102–3(k)(1). The plan administrator must provide each participant with notice of all "material modifications" within 210 days after the close of the plan year in which the modification was adopted. 29 U.S.C. § 1022(a)(2); 29 C.F.R. § 2520.104b–3(a).

In this instance, an "average plan participant" who read the Fund's summary plan description, effective January 1, 1991, would not have understood that the Fund would deny a valid pending claim from an eligible participant solely because the Fund subsequently determined that the employer had engaged in "selective participation." Plainly, the retroactive application of the "selective participation" rule was material. It was explained in a January 17, 1989 memorandum to employers and employers' agents (but not to Ritzer's employer), and it should have been explained in the summary plan descrip-

tion. The Fund has made no showing that it provided either Ritzer or his employer with a description of the retroactive aspect of the rule by any other means.

Thus, "[t]o deny Ritzer's claim based on an unannounced or inadequately publicized *in terrorem* rule serves no rational purpose." 807 F.Supp. at 262. Moreover, the inadequately disclosed rule violates statutory and regulatory requirements that are designed to apprise ERISA plan participants of the risk that they may be required personally to pay the often substantial cost of medical treatment.

## II

■ The Fund urges reconsideration on six grounds. Most of these can be disposed of without extended discussion.

The Fund contends, first, that the Fund explained the selective participation policy to Consolidated National Services (Consolidated), the employer's representative and agent in matters relating to the Fund, and that under the law of agency and the Labor–Management Relations Act of 1947, 29 U.S.C. §§ 141 *et seq.*, knowledge of an employer's agent is imputed to the employer.

The Fund misconstrues the central holding of this court's opinion. The court held, in substance, that when an ERISA plan adopts a rule which gives its administrator extraordinary power retroactively to deny health benefit claims, and where the only rational purpose of that rule is to frighten participating employers into strict compliance with the rule, the Fund must clearly and plainly inform participating employers of that rule.

To inform only a central processing agent (such as Consolidated) of such a rule, and to fail to inform directly the employers that will bear the burden of non-compliance constitutes an arbitrary and capricious implementation of the rule. Thus, the Fund's showing that it explained the rule to Consolidated is not material as such action does not induce compliance by participating employers.

Moreover, this contention ignores ERISA's disclosure requirements. Congress has provided that the summary plan description, together with a summary description of material modifications, is to be the principal means by which plan participants are informed of existing and modified rules regarding, among other things, the denial of claims. The Fund may not circumvent this statutory requirement by providing that information solely to the employer's agent.

The Fund contends, second, that the employer is bound by the "selective participation" rule because the employer agreed to be bound by all rules without respect to whether the employer was informed of any rule.

This contention lacks merit. ERISA plan participants are plainly not bound to a rule that is implemented, as here, in an arbitrary and capricious manner, notwithstanding a prior agreement by a participating employer to be bound by all rules. Moreover, even if the modification was not implemented in an arbitrary and capricious manner, it was not disclosed in the Fund's subsequently prepared summary plan description, as required by statute and regulation.

The Fund contends, third, that it is entitled to conduct non-party discovery of the employer, especially since this court stated it would consider a motion for summary judgment by Ritzer if he can submit evidence that he was a "regular employee who works at least 21 hours per week" in April 1991. The Fund also seeks permission to file a third-party complaint against the employer, if warranted.

The parties are entitled to discovery with respect to whether Ritzer was "a regular employee" in April 1991, the only factual issue with respect to the employer remaining in this case. They may make appropriate motions to Magistrate Judge Azrack for this limited purpose.

The court is puzzled by the Fund's request to bring a cross-claim against the employer. If the Fund submits such a cross-claim, the court will focus on it. At this point the Fund has suggested no factual basis for it.

The Fund says, fourth, that this court ignored the Fund's contention that Ritzer's claim was preempted by ERISA. This ground is frivolous. The court plainly assumed in its prior opinion that Ritzer's claim

was preempted by ERISA, it examined whether Ritzer had exhausted the administrative procedures required by the Act and regulations promulgated thereunder, and it explicitly discussed and applied the standard of review applicable to such cases.

■ The Fund contends, fifth (in a post-motion letter), that Ritzer, in an application to participate in the Fund's plan that he submitted on behalf of the employer, "acknowledged the Fund's right to terminate and cancel coverage 'retroactive to the effective date [of the agreement] and den[y] all claims incurred which shall become my company's responsibility thereafter.' "

This contention is misleading and, in any event, lacks merit. The Fund selectively quoted from a sentence that states, in full, "I understand that any material false statement made in this application constitutes the legal basis for termination or cancellation of coverage retroactive to the effective date and denial of all claims incurred which shall become my companies [sic] responsibility thereafter." Because the Fund makes no showing that the application contained material false statements, the Fund cannot rely upon this statement as a basis for the retroactive denial of Ritzer's claim.

### III

The Fund contends, last, that the papers presented do not eliminate the possibility that Ritzer and his employer actually knew of the retroactive aspect of the Fund's "selective participation" rule, that these are material facts in dispute, and that the court erred in granting partial summary judgment to plaintiff. The Fund points out that Ritzer never explicitly denied that he and his employer knew of the Fund's "selective participation" rule but merely denied knowing that his employer was engaged in "selective participation."

This contention requires the court explicitly to explain how it allocates the burden of proof in this dispute.

### A

■ Insofar as the court granted partial summary judgment to plaintiff on the ground

that the Fund could not show that it informed Ritzer's employer of an *in terrorem* rule designed to induce employers strictly to obey the plan's eligibility rules, this court placed the burden on the Fund to demonstrate how and in what it manner it had informed the employer of this rule. *See* Memorandum and Order, Oct. 21, 1992 (directing the Fund to submit papers showing "the manner and date in which plaintiff and his employer ... were informed of each ... rule and regulation"). The court implicitly reasoned that an ERISA plan is in a far better position to show that it informed employers of a particular rule than an employee or, as here, a former employee.

Presumably a plan which could not show that it had informed an employer of an *in terrorem* rule could show, instead, that the employer had actual knowledge of the rule through some other source. *Cf. Rubin v. Decision Concepts Inc.,* 566 F.Supp. 1057, 1058 (S.D.N.Y.1983) (holding against claimant where plan administrator could show it sent memorandum describing material modification to claimant).

In this instance, the Fund failed to show either that it informed the employer of the rule or that the employer had actual knowledge of the rule.

### B

Insofar as the court grants partial summary judgment to plaintiff on the ground that the summary plan description inadequately explained an *in terrorem* rule, the court may infer that plaintiff understood the rule as explained in the faulty description (even if plaintiff had not read the description). The ERISA plan could rebut the inference by showing that the participant had in fact known of the provision.

#### 1.

■ The Circuit Courts are divided on the question as to whether a plaintiff must prove that he or she in fact read and relied upon a faulty summary plan description in order to prevent an ERISA plan from enforcing an undisclosed provision. The Eleventh Circuit has placed the burden on the plaintiff to show detrimental reliance. *See Branch v. G.*

*Bernd Co.*, 955 F.2d 1574, 1578–79 (11th Cir. 1992).

The First Circuit has held that the plaintiff must show either significant reliance upon, or the possibility of prejudice flowing from, the faulty summary plan description. *See Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 522–23 (1st Cir.1988); *Govoni v. Bricklayers, Masons and Plasterers Int'l Union Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir.1984).

The Sixth Circuit has stated that a plaintiff need not prove detrimental reliance. *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 137 (6th Cir.1988) ("Congress has promulgated clear directives prohibiting misleading summary descriptions. This court elects not to undermine the legislative command by imposing technical requirements upon the employee.").

And the Second Circuit has not decided the issue, though it has twice raised it. *See, e.g., Heidgerd v. Olin Corp.*, 906 F.2d 903, 909 (2d Cir.1990); *Howard v. Gleason Corp.*, 901 F.2d 1154, 1161 (2d Cir.1990). *Cf. Lee v. Burkhart*, 991 F.2d 1004, 1011 (2d Cir.1993) (assuming plaintiff must prove detrimental reliance where ERISA fiduciary misrepresents plan details in communications to plan participants that are not required by statute).

### 2.

Consistent with the teachings of the First Circuit, this court concludes that Ritzer must and has shown a high probability of prejudice as a result of the Fund's faulty summary plan description.

Given the *in terrorem* nature of the "selective participation" rule, the court could reasonably expect that had the Fund adequately explained the rule in its summary plan description Ritzer would have learned about the retroactive aspect of the rule from coworkers, even if he had not read the plan. While many employees may never in fact study summary plan descriptions, they are likely to learn of the provision as explained in the description through conversations with fellow employees and their employer.

Where a disclosed provision threatens to deprive every worker in a workplace of health benefits, the court may infer that a plan participant learned of the provision from others. Conversely, where a plan fails to disclose such a provision to participants in a workplace (either through the summary plan description or by other means), the court may infer that the employee did not know of its existence.

This case is substantially different from *Branch v. G. Bernd Co.*, in which the Eleventh Circuit held that a plaintiff must show detrimental reliance. There, the summary plan description misstated the time in which a plan participant could elect continuing health benefit coverage after a "qualifying event" (such as the termination of his employment). The misdescribed rule was purely technical and unlikely to be a topic of conversation among workers and employers. The Eleventh Circuit concluded that plaintiff could show no injury, absent proof that he read and relied upon the inaccurate description.

Moreover, had the summary plan description accurately stated the "selective participation" rule, Ritzer's employer would have been more likely to know of and avoid violating the rule. And even if the employer were inclined to cheat, Ritzer or his fellow employees (including the clerk who presumably submitted listings of plan participants to the Fund) would have been in a better position, out of self-interest, to monitor and induce the employer strictly to comply with the rule.

A rule requiring plaintiffs to prove detrimental reliance regardless of the nature of the inaccuracy in the summary plan description not only ignores the means by which information is disseminated and by which employers' conduct is influenced in the typical workplace, but also imposes an insurmountable hardship on many plaintiffs. A person is likely to incur substantial medical expense when dying or, as here, in the year or two before dying. To require the claimant's estate to prove that the now deceased claimant actually read and relied on a faulty summary plan description is virtually to immunize the ERISA plan from liability. Such a rule hardly advances the Congressional purpose of protecting the beneficiaries of

ERISA plans by insuring that employees are fully and accurately apprised of their rights under the plan.

Thus, the court infers that Ritzer was injured as a result of the Fund's failure to comply with Congressional command.

### 3.

The Fund could have rebutted this inference of injury by showing that Ritzer in fact knew of the retroactive aspect of the "selective participation" rule. The Fund had every opportunity to conduct discovery prior to bringing its own motion for summary judgment. At no point in this litigation did the Fund seek to discover whether Ritzer had actual knowledge of the rule. Ritzer has since died.

His estate cannot be made to suffer because the Fund failed, first, to disclose adequately the plan administrator's authority retroactively to deny valid claims by eligible participants, second, to review administratively his denial of a claim as he requested, and third, to discover facts adequate to form a defense to his claim.

### IV

Defendant's motion to reargue is denied.

Plaintiff may move for summary judgment on the ground that Ritzer was "a regular employee who work[ed] at least 21 hours per week" in April 1991.

In the event Ritzer's estate is unable to make such a showing, it may wish to address whether Ritzer was adequately informed of his right, pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. § 1161 *et seq.*, to elect continued coverage of his health benefits after the termination of his eligible employment.

So ordered.