Florence **MANGINARO**, as Guardian for Austin Scott Manginaro, an incapacitated person, and Austin Manginaro, Plaintiffs,

v.

THE WELFARE FUND OF LOCAL 771, I.A.T.S.E., William R. Hanauer, Louis Bertini, Richard Nord, Harold Klein, Joel Grossman and Alan H. Raphael individually and as trustees or former trustees of The Welfare Fund of Local 771, I.A.T.S.E., Union Labor Life Insurance Company and the Administrator of the Welfare Fund of Local 771, I.A.T.S.E. Defendants.

No. 96 Civ. 5545(MBM).

United States District Court, S.D. New York.

July 27, 1998.

David S. Preminger, Rosen Preminger & Bloom, New York, NY, for Plaintiffs.

Stanley M. Berman, Babette A. Ceccotti, Cohen Weiss & Simon, New York, NY, for Defendant Welfare Fund.

John C. Canoni, Whitman Breed Abbott & Morgan LLP, New York, NY, for Defendant Union Labor Life.

---

### OPINION AND ORDER

MUKASEY, District Judge.

Florence Manginaro, as guardian for her son, Austin Scott Manginaro ("Scott"), and Austin Manginaro, Scott's father, sue the Welfare Fund of Local 771, I.A.T.S.E. (the "Fund"), the Fund's current and former trustees (the "Trustees"), and the Union Labor Life Insurance Company ("ULLICO"), alleging that defendants refused to pay certain of Scott's medical expenses in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1140 *et seq.* (1994). ULLICO counterclaims for reimbursement of medical expenses it has already paid on Scott's behalf.

Plaintiffs move pursuant to Fed.R.Civ.P. 56(c) for partial summary judgment on the unpaid claims, and for dismissal of ULLICO's counterclaims. ULLICO also seeks summary judgment on certain counterclaims, as well as dismissal of plaintiffs' complaint. The Fund and the Trustees move for summary judgment dismissing the complaint on procedural grounds. For the reasons stated below, each of the parties' motions is granted in part and denied in part, and a part of plaintiffs' claims is remanded to ULLICO and the Fund for consideration of additional evidence.

### I.

The following facts, which are not in dispute, are relevant to these motions: the Fund is an employee welfare benefit plan governed by ERISA. (Fund Rule 56.1 Statement ¶ 1) The Trustees and ULLICO are fiduciaries of the Fund. (Compl. ¶¶ 9, 11; ULLICO Moving Br. at 5 n.3) Austin Manginaro is a Fund participant and Scott is a Fund beneficiary. (Fund Rule 56.1 Statement ¶ 4) The Fund provides medical benefits to its participants and beneficiaries pursuant to the terms of group insurance policies between the Fund and various insurance companies. (*Id.* ¶ 3) Between January 1, 1991, and December 31, 1994, Scott was covered by a group insurance policy issued by ULLICO (the "Plan"). (*Id.* ¶ 5)

#### A. Scott's Condition

Scott was born on April 15, 1971. (Pl. Rule 56.1 Statement ¶ 3) On May 27, 1979, he was severely burned and suffered smoke inhalation in a toy store fire. (*Id.* ¶¶ 4–5) While being treated at the Nassau County Medical Center, Scott was given an overdose of morphine which caused him to slip into a coma. (*Id.* ¶¶ 6–7) Although Scott awoke from that coma and eventually returned home (*id.* ¶ 9), he continues to suffer from quadriplegia and other severe neurological impairments. (Compl. ¶ 6) Since leaving the hospital, Scott has received 24–hour–a–day nursing care at the direction of his treating physician, Mihai D. Dimancescu. (Pl. Rule 56.1 Statement ¶ 10)

From 1979 through 1990, the Fund's prior medical insurers, the Equitable Life Assurance Society ("Equitable") and Equitable's successor, Aetna Life Insurance Company ("Aetna"), fully reimbursed plaintiffs for Scott's nursing expenses. (Pl. Rule 56.1 Statement ¶ 17) From time to time, the Fund, Equitable, or Aetna, would ask plaintiffs to submit additional information regarding a particular claim for benefits. (*Id.* ¶ 43)

Plaintiffs provided this information themselves, or in certain cases arranged for Dimancescu to send it directly to the Fund or the relevant insurer. (*Id.* ¶ 45)

### B. *Third–Party Litigation*

Plaintiffs sued both the toy store and the hospital seeking to recover for Scott's injuries. (ULLICO Rule 56.1 Statement ¶ 7) In June 1984, they settled their claims against the toy store for approximately $2.4 million. (*Id.*) Pursuant to that settlement, which is not allocated to any particular type of damages suffered by Scott, plaintiffs have received, and will continue to receive, lump-sum payments at regular intervals until 2004. (Pl.Ex. 39) The settlement also provides for Scott to receive monthly payments, for life, in the amount of $10,000 plus 3% interest compounded annually, which is, at present, $13,840 per month. (ULLICO Rule 56.1 Statement ¶ 8)

Plaintiffs' malpractice lawsuit against the hospital culminated in a $1.1 million judgment in their favor issued on November 10, 1993, a result later affirmed on appeal. *See Manginaro v. County of Nassau*, 221 A.D.2d 603, 605, 634 N.Y.S.2d 181, 183 (2d Dep't 1995). The Appellate Division characterized the award as "damages for [Scott's] future unreimbursed medical expenses." *Id*.

### C. *The Plan*

As noted, Scott was covered by the Plan between January 1, 1991, and December 31, 1994. Several of the Plan's provisions are at issue here. First, the Plan contains a limitation on actions which provides, in pertinent part, as follows:

> No legal action can be brought until at least 60 days after written proof of loss is given to the Company [ULLICO]. No legal action can be brought more than two years after the date written proof of loss is required.

(Pl.Ex. 8 at 41) Second, the Plan contains a subrogation clause which provides, in full, as follows:

> The Company [ULLICO] shall be subrogated to the extent of any benefits paid under this Contract, to the proceeds of any

settlement or judgment effected against a third party and resulting from the exercise of any rights of recovery which the Insured [plaintiffs] may have against any person or organization. The Insured claiming benefits under this shall execute and deliver such instruments and take such other action as the Company may require to implement this provision. The Insured shall do nothing to prejudice the rights given the Company by this provision without its consent.

(*Id.* at 38) Third, the Plan contains an exclusion for medical expenses incurred for "custodial care." (*Id.* at 30) The Plan defines "custodial care" as follows:

> Custodial Care means treatment, services, or confinement, regardless of who recommends, prescribes, or performs them, or where they are provided, which could be rendered safely and reasonably by a person not medically skilled, and are designed mainly to help the patient with daily living activities. Custodial care includes:
>
> A. personal care such as help in: walking, getting in and out of bed, bathing, eating (including tube or gastronomy), exercising, dressing, using the toilet or administration of an enema;
>
> B. homemaking such as preparing meals or special diets;
>
> C. moving the patient;
>
> D. acting as companion or sitter; and
>
> E. supervising medication which can usually be self-administered.
>
> The Contractholder [the Fund] together with the Company [ULLICO], its medical staff and/or an independent medical review determines which services are Custodial Care.
>
> The determination of Custodial Care in no way implies that the care being rendered is not required by the patient; it only means that it is the kind of care that is not covered under this Contract.

(*Id.* at 4) Neither the Fund nor ULLICO provided plaintiffs with a copy of the Plan. (Pl. Rule 56.1 Statement ¶ 16)

However, on July 21, 1992, the Fund gave Austin Manginaro a Summary Plan Description ("SPD") detailing certain features of the

Plan.[1] (A. Manginaro Reply Decl. ¶¶ 4–5; 7/25/97 Canoni Decl. Ex. A) The SPD—unlike the Plan—does not mention any limitation on actions, although it does contain a similar exclusion for custodial care:

> Custodial Care
>
> Care comprised of services and supplies, including room and board and other institutional services, which are provided to an individual, whether disabled or not, primarily to assist him in the activities of daily living. Such services and supplies are custodial care without regard to the practitioner or provider by whom or by which they are prescribed, recommended or performed. Coverage is *not* provided for such care.

(Pl.Ex. 6 at 27) (emphasis in original) The SPD also includes the following passage regarding subrogation and reimbursement:

> If you or a dependent receive [*sic*] benefit payments from the Local 771 I.A.T.S.E. Welfare Fund for services or prescription drugs that result from a claim against a third party, the Fund has the right to collect payment from the third party or to be repaid from benefits you recover from the third party. This right of recovery does not apply if the third party is an insurer or a policy [*sic*] covering you or your dependents.
>
> When you or your dependents file for benefits under these circumstances, you agree to reimburse the Fund for any benefit payments you receive out of the money you recover from the third party. You or your dependents also agree to take whatever action is necessary and to provide all information, assistance, and paperwork that the Fund requires in order to enforce its rights....

(*Id.* at 20–21) Finally, the SPD provides that it is "not meant to interpret or extend or change in any way the provisions of this Plan as expressed in the insurance contracts" and that if "information in this [SPD] conflicts with the insurance contracts or Plan rules and regulations, the contracts or rules and regulations will govern." (*Id.* at Intro.)

---

**1.** Technically, the Fund gave the SPD to Austin Manginaro's lawyers after receiving a signed authorization from him to do so. There is no

### D. *ULLICO's Denial of Coverage*

As had the Fund's prior medical insurers, ULLICO fully reimbursed plaintiffs for Scott's nursing expenses between January 1, 1991, and June 13, 1992, paying claims during this period totaling $399,285.60. (ULLICO Rule 56.1 Statement ¶¶ 9–10, 24) However, beginning with the period June 14–27, 1992, ULLICO denied payment for these claims on the ground that they were charges for custodial care and therefore not covered by the Plan. (*Id.* ¶¶ 12–14) ULLICO informed plaintiffs of the denial of coverage by letter dated September 9, 1992. (*Id.* ¶ 14)

ULLICO's decision to deny coverage was made by Salvatore Fiscina, M.D., a medical advisor employed by ULLICO. (Pl. Rule 56.1 Statement ¶ 152) Fiscina concluded that Scott's nursing services were not covered by the Plan because they:

> appear to be non-skilled and custodial ... [and] could be rendered safely and reasonably by a person *not* medically skilled. The nursing services involve personal care assistance and the preparation and giving of meals. They also involved moving the insured, and acting as a companion. The passive exercises of the extremities could be done by a non-medical person.

(Pl.Ex. 28 at 2 (emphasis in original)) Fiscina's findings were based on his review of two sets of documents: 1) a medical advisor referral form (Pl.Ex. 26); and 2) notes from Scott's nurses for the period June 14–27, 1992 (the "Notes"). (Pl.Ex. 14) Fiscina did not consider any other information relating to Scott's condition or the nature of the nursing services being provided to him before deciding to deny coverage.

The referral form contains the following information about Scott's condition and the terms of the Plan:

> Scott was then 21 years old and had been injured in a fire in 1979; Scott would require nursing services for life because of injuries sustained in the fire and because of a morphine overdose; diagnoses of

evidence that Austin Manginaro received the SPD before July 21, 1992.

"burn, unspecified" and "unspecified condition of brain" were applicable; Scott was receiving full time nursing care; medically necessary skilled nursing care was 100% covered under the Contract; there was no limit to the amount which would be reimbursed under the Contract; and ULLICO had already paid $263,082.90 for Scott's care.

(Pl. Rule 56.1 Statement ¶ 126; Pl.Ex. 26) According to the Notes, which detail the activities of Scott's nurses from June 14–27, 1992, the nurses spent much of their time performing personal care services for Scott, such as bathing, feeding, exercising, administering medication, and the like. (Pl.Ex. 14) However, the Notes also reflect that Scott experienced a choking episode during this period which required him to be suctioned twice by one of the nurses. (*Id.*) Fiscina does not mention the choking episode in his report. (Pl.Ex. 28 at 2)

As for the Fund, it did not participate in the decision to deny coverage for Scott's nursing expenses. (Pl. Rule 56.1 Statement ¶ 64) Jean Catalanatto, the Fund's Administrator, learned of ULLICO's decision in September 1992. (*Id.* ¶ 63) Although Catalanatto examined that decision to determine if custodial care was indeed excluded by the Plan, she did not review Fiscina's findings that the nursing services being provided to Scott were in fact custodial. (*Id.* ¶ 66) At her deposition, Catalanatto testified that she never questioned Fiscina's factual findings and had "just assumed that [Scott's] condition had gotten better." (Catalanatto Dep. at 66)

### E. *Procedural History*

On September 24, 1992, plaintiffs sent a letter of appeal via certified mail to ULLICO requesting reconsideration of the denial of coverage. (Pl.Ex. 19–20) A copy of that letter was also sent to the Fund. (*Id.*) Neither ULLICO nor the Fund responded to plaintiffs' letter, and no internal review of ULLICO's decision was conducted. (Compl.¶¶ 25–27)

On January 8, 1993, plaintiffs filed suit against ULLICO in New York state court challenging the denial of coverage. (*Id.* ¶ 26) While that case was pending, plaintiffs continued to submit claims to ULLICO for nursing expenses incurred between June 27, 1992, and December 31, 1994, the end of the Plan period. (*Id.* ¶ 27) These unpaid claims total $472,035.00. (*Id.* ¶ 28) The state court lawsuit—which raised breach of contract and tort claims but no ERISA claims—has been suspended at the parties' request pending the outcome of this action. (*Id.* ¶ 26)

On July 24, 1996, plaintiffs sued ULLICO, the Fund, and the Trustees in this court asserting five claims for relief under ERISA.[2] (*Id.* ¶¶ 29–40) In their first, second, and fourth claims, plaintiffs seek to recover benefits allegedly due under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) (1994). In their third and fifth claims, they seek equitable relief for certain alleged breaches of fiduciary duty under 29 U.S.C. § 1132(a)(3).

On November 20, 1996, ULLICO counterclaimed seeking reimbursement for nursing expenses it has already paid on Scott's behalf.[3] (ULLICO Ans. ¶¶ 49–68) ULLICO's first and second counterclaims are based on the Plan's subrogation provision and rely on contractual and unjust enrichment theories of recovery, respectively. In its third counterclaim, ULLICO seeks restitution in the amount of the prior payments on the theory that Scott's nursing expenses were not covered by the Plan and ULLICO paid these claims in error.

As noted, the parties cross-move for summary judgment pursuant to Rule 56(c).

### II.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

**2.** Plaintiffs have withdrawn their sixth claim for relief. (Pl. Opp. Mcm. at 15 n.8)

**3.** The court has jurisdiction over ULLICO's counterclaims under 29 U.S.C. § 1132(a)(3) and federal common law. *See Harris Trust and Sav.*

*Bank v. Provident Life and Accident Ins. Co.,* 57 F.3d 608, 615 (7th Cir.1995); *Provident Life and Accident Ins. Co. v. Waller,* 906 F.2d 985, 993 (4th Cir.1990).

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment, the non-movant must set forth specific facts which establish a genuine issue for trial, or demonstrate that the moving party is not entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The parties' summary judgment motions raise two central questions: 1) Does the Plan require defendants to pay for Scott's nursing expenses? and 2) Does the Plan require plaintiffs to reimburse ULLICO for expenses it has already paid on Scott's behalf? Before reaching these questions, however, certain preliminary matters must be addressed. Chief among these is whether the statute of limitations bars any of these claims.

A. *Plaintiffs' First, Second, and Fourth Claims Are Not Time–Barred*

As noted, plaintiffs' first, second, and fourth claims seek to recover benefits allegedly due under the plan pursuant to 29 U.S.C. § 1132(a)(1)(B). Because ERISA does not establish a statute of limitations for benefits claims brought under § 1132(a)(1)(B), courts apply the most analogous state statute of limitations. *See Miles v. New York State Teamsters Conference Pension and Retirement Fund*, 698 F.2d 593, 598 (2d Cir.1983); *Lowry v. Aetna Life Ins. Co.*, No. 96 Civ. 0856 (MBM), 1996 WL 529211 (S.D.N.Y.1996), at *2 (S.D.N.Y. Sept. 18, 1996). In New York, that statute is the six-year limitation on contract actions. *See Miles*, 698 F.2d at 598 (citing N.Y. C.P.L.R. § 213(2) (McKinney 1990)). However, New York law also provides that a shorter limitations period will govern where "prescribed by written agreement." N.Y. C.P.L.R. § 201 (McKinney 1990). "[W]ritten agreement" includes employee welfare benefit plans governed by ERISA. *See Mitchell v. Shearson Lehman Bros., Inc.*, No. 97 Civ. 0526, 1997 WL 277381, at *2 (S.D.N.Y. May 27, 1997); *Lowry*, 1996 WL 529911, at *2; *Lugo v. AIG Life Ins. Co.*, 852 F.Supp. 187, 195 (S.D.N.Y.

1994); *Moro v. Welfare Plan of NMU Pension and Welfare Plan*, No. 84 Civ. 9275 (WCC), 1985 WL 1896, at *2–3 (S.D.N.Y. July 11, 1985).

Here, the Plan's limitation on actions provides that: "No legal action can be brought more than two years after the date written proof of loss is required." (Pl.Ex. 8 at 41) Plaintiffs argue that this limitation does not apply to their claims because they never received a copy of the Plan and the SPD they did receive does not mention any limitation on actions. I agree.

ERISA requires that all participants and beneficiaries be provided with an SPD which details, *inter alia*, "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b) (1994). The regulations require also that an SPD "must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries" with regard to the plan's provisions. 29 C.F.R. § 2520.102–2(b) (1998). "Thus, the statute contemplates that the summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907–908 (2d Cir.1990). Consistent with these principles, "courts have recognized that where the SPD does not contain a benefit forfeiture clause, then such a forfeiture contained in the underlying plan will not be enforced against a participant." *James v. New York City Dist. Council of Carpenters' Benefits*, 947 F.Supp. 622, 628 (E.D.N.Y. 1996); *accord Heidgerd*, 906 F.2d at 908; *Frank C. Gaides, Inc. v. Provident Life & Accident Ins. Co.*, No. 95–CV–1273 (CPS), 1996 WL 497085, at *4–5 (E.D.N.Y. Aug. 26, 1996).

The two-year limitation on actions contained in the Plan, which would have the effect of shortening the statute of limitations generally applicable to benefits claims under ERISA in New York by four years, qualifies as a "circumstance[ ] which may result in disqualification, ineligibility, or denial or loss of benefits" that should have been disclosed to plaintiffs via the SPD. 29 U.S.C. § 1022(b); *cf. Dodson v. Woodmen of the World Life*

*Ins. Soc'y,* 109 F.3d 436, 439 (8th Cir.1997) (holding that time limit for filing a claim for benefits with plan must be disclosed in SPD). Absent such a provision, the SPD in this case "had the effect of ... failing to inform" plaintiffs of a key limitation on their right to recover benefits under the Plan. 29 C.F.R. § 2520.102–3(b). Accordingly, I will apply the six-year statute of limitations of N.Y. C.P.L.R. § 213 to plaintiffs' benefits claims.

 Applying that limitations period reveals that plaintiffs' benefits claims are undoubtedly timely. As the Second Circuit stated in *Miles,* "[a] plaintiff's ERISA cause of action accrues and the six-year limitations period begins to run, when there has been a repudiation by the fiduciary which is clear and made known to the beneficiaries." 698 F.2d at 598. This rule of accrual applies even where, as here, the Plan prescribes a different accrual date, such as when " 'the proof of loss was required to be furnished.' " *Mitchell,* 1997 WL 277381, at *2 (quoting *Price v. Provident Life and Acc. Ins. Co.,* 2 F.3d 986, 988 (9th Cir.1993)); *see Patterson–Priori v. Unum Life Ins. Co. of America,* 846 F.Supp. 1102, 1106 (E.D.N.Y.1994). In this case, plaintiffs' benefits claims accrued at the very earliest on September 9, 1992, when ULLICO denied coverage for these claims.[4] Because they filed suit in this court on July 24, 1996, plaintiffs' benefits claims are timely.

Defendants resist this conclusion, arguing that ERISA does not require that a limitation on actions be included in the SPD, and even if it did, plaintiffs cannot claim to have been prejudiced by the faulty SPD because they concede that they never read it. Although these arguments are unpersuasive, they are relevant to other issues raised in this case, and therefore will be considered in detail here.

Defendants contend first that ERISA regulations require only that an SPD inform a participant that if his claim for benefits is denied, he "may file suit in state or federal court," 29 C.F.R. § 2520.102–3(t)(2) (1998), and do not mandate that an SPD contain the various state and federal limitations periods applicable to such claims. Although I agree with this statement of the law—indeed I conclude that plaintiffs' breach of fiduciary duty claims are untimely even though the statute of limitations applicable to those claims need not be disclosed to plaintiffs via the SPD, *see* discussion *infra* at part II B.—this principle does not require that I enforce the limitation on actions at issue here.

To say that an SPD need not inform participants of the statute of limitations periods generally applicable to their claims is not to say also that a statutory limitations period may be shortened by the Plan without suitable disclosure to the parties affected by such a provision. More specifically, although the six-year limitations period of N.Y. C.P.L.R. § 213 may be shortened by the Plan, such a limitation will not be enforced unless it was properly disclosed to plaintiffs via the SPD. *See Davis v. NMU Pension & Welfare Plan,* 810 F.Supp. 532, 535 (S.D.N.Y. 1992) (refusing to enforce shortened limitations period, *inter alia,* because SPD containing limitation on actions was not sent to plaintiff until after he retired); *cf. Hart v. Anderson,* No. 77 Civ. 2680(MJL) slip op. at 16 (S.D.N.Y. Apr. 24, 1981), *aff'd,* 671 F.2d 492 (2d Cir.1981) (table) (holding that limitation on actions was enforceable where SPD containing shortened period was mailed to plaintiff).

 Nor do my prior decisions in *Mitchell* and *Lowry* require a different result. In both cases, the plaintiffs conceded that the plan-prescribed limitations period governed their claims. *See Mitchell,* 1997 WL 277381, at *2; *Lowry,* 1996 WL 529211, at *2. In fact, both *Mitchell* and *Lowry* turned on the question of when the plaintiffs' claims accrued for statute of limitations purposes, not on what limitations period applied in the first place. *See Mitchell,* 1997 WL 277381, at *2–7; *Lowry,* 1996 WL 529211, at *3–5. As a

---

4. In general, benefits claims brought under ERISA do not accrue until the internal appeals process provided for by the plan has been completed. *See Mitchell,* 1997 WL 277381, at *5–6. However, I need not decide when that process should be deemed to have ended in this case—as noted, neither ULLICO nor the Fund responded to plaintiffs' request for such an appeal—because plaintiffs' benefits claims are timely even if they accrued when ULLICO initially denied coverage for them.

result, neither case stands for the broad proposition that limitations on actions contained in employee welfare benefit plans are always enforceable, particularly, where, as here, the Plan was never distributed to plaintiffs and the SPD that was makes no mention of any such limitation.[5]

Moreover, the Fund's own prior conduct suggests that it recognized the need to advise participants and beneficiaries of a shortened limitations period via the SPD. In 1984, the Fund issued an SPD (the "1984 SPD") describing the prior group insurance policy issued by Aetna. (Pl.Ex. 5) The 1984 SPD contains the following limitation on actions: "No legal action can be brought to recover under any benefit after 3 years from the deadline for filing claim [*sic*]." (*Id.* at 58) The Fund's unexplained failure to include similar language in the SPD that governs plaintiffs' claims is fatal to defendants' attempt to enforce this limitation against them here.[6]

█ Defendants' second objection is more troublesome. Defendants argue that plaintiffs should not be permitted to prevent enforcement of the Plan's limitation on actions based on the faulty SPD because they concede that they never read it. Because plaintiffs never read the SPD, defendants contend, they should not be heard to complain about any defects it may contain.

Analysis of this issue begins with the Second Circuit's decision in *Heidgerd*. In that case, Heidgerd's employer, Olin, distributed an SPD to its employees summarizing the company's severance pay policy. 906 F.2d at 905. However, Olin's "official" severance policy, embodied in an employee welfare benefit plan which was not distributed to the employees, had different terms. *Id.* After

Olin denied severance to Heidgerd based on terms present in the plan but not included in the SPD, Heidgerd sued for payment of benefits. *Id.* at 906. The district court found for Heidgerd, concluding that the SPD's terms were controlling despite the presence of different terms in the plan. *Id.* at 907.

The Court of Appeals affirmed, holding that "where, as here, the terms of a plan and those of a plan summary conflict, it is the plan summary that controls." *Id.* at 908. The Court reached this result even though the SPD contained a disclaimer indicating that it "merely purported to summarize" the plan. *Id.* at 905. The *Heidgerd* Court concluded that "[t]o allow the Plan to contain different terms that supersede the terms of the [SPD] would defeat the purpose of providing the employees with summaries." *Id.* at 907–08.

However, *Heidgerd* did not hold that a participant must have relied upon a faulty SPD for a court to refuse to enforce plan terms omitted from the SPD and not otherwise disclosed. The Second Circuit accepted the district court's finding that Heidgerd had read the SPD and relied on its terms relating to severance. *Id.* at 907. Indeed, the *Heidgerd* Court stated that it "express[ed] no view as to the correctness of the [district court's] ruling that proof of reliance is necessary to the enforcement of the terms of an ERISA plan summary" noting that "the issue of whether the imposition of this reliance requirement is not before us on this appeal." *Id.* at 909.

Other circuit courts of appeal are divided over whether a participant must show that he relied upon a faulty SPD to prevent enforcement of undisclosed plan terms. *Compare Branch v. G. Bernd Co.*, 955 F.2d 1574, 1578–

---

5. ULLICO argues also that the limitation on actions should be enforced because ULLICO provided plaintiffs with a copy of the Plan during discovery in the state court lawsuit in October 1993. (ULLICO Reply Br. at 4) However, that ULLICO gave the Plan to plaintiffs under compulsion of their lawsuit to recover benefits allegedly due under the Plan does not mean that ULLICO can use that fact as a sword to defeat the essentially identical claims they assert here. In any event, plaintiffs' benefits claims had already accrued by that date, and I decline to apply the Plan's limitation on actions retroactive-

ly to bar those claims. *Cf. Schein v. News America Publ'g, Inc.*, No. 89 Civ. 0052(MBM), 1991 WL 117638, at *5 (S.D.N.Y. June 24, 1991) (refusing to apply plan amendment retroactively to bar claims that had already accrued). ·

6. Neither the 1984 SPD nor the Aetna policy to which it related were in effect when ULLICO denied plaintiffs' claims on September 9, 1992. By that time, both had been replaced by the Plan and the SPD at issue here.

79 (11th Cir.1992) (holding that plaintiff must show detrimental reliance based on the SPD) *with Aiken v. Policy Management Sys. Corp.,* 13 F.3d 138, 141–42 (4th Cir.1993) (per curiam) (holding that plaintiff must show "significant reliance upon, or possible prejudice flowing from, the faulty plan description.") (quoting *Govoni v. Bricklayers, Masons & Plasterers Int'l Union, Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir. 1984) (Breyer, J.)); *Maxa v. John Alden Life Ins. Co.,* 972 F.2d 980, 984 (8th Cir.1992) (same) *with Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 137 (6th Cir. 1988) (stating in dictum that plaintiff need not show detrimental reliance or prejudice).

Similarly, the two district courts in this Circuit to have considered the issue have reached different conclusions. In *Estate of Ritzer v. National Org. of Indus., Trade Unions Ins. Trust Fund Hosp., Medical, Surgical Health Benefit,* 822 F.Supp. 951, 954 (E.D.N.Y.1993), Judge Nickerson held that a plaintiff need not show that "he or she in fact read and relied upon a faulty summary plan description in order to prevent an ERISA plan from enforcing an undisclosed provision." Rather, Judge Nickerson refused to enforce such a provision based on his finding that there was a "high probability" that the plaintiff had been prejudiced by the faulty SPD. *Id.* at 955. Thus, the *Ritzer* Court's holding is consistent with the reliance or prejudice approach reflected in the decisions of the First, Fourth, and Eighth Circuit Courts of Appeal noted above.

A different result was reached by Chief Judge Dorsey in *Moriarity v. United Techs. Corp. Represented Employees Retirement Plan,* 947 F.Supp. 43 (D.Conn.1996). In that case, the Court found that because of a conflict between the SPD and the plan, the SPD's terms governed Moriarity's right to benefits. *Id.* at 51. Notwithstanding the above, and notwithstanding the Court's subsequent determination that the plan's denial of Moriarity's claim was arbitrary and capricious, Chief Judge Dorsey held that the plaintiff was barred from recovering any benefits allegedly due under the plan because "[w]ithout having read the SPD, Plaintiff could not have relied on it or been prejudiced or misled by its contents." *Id.* at 53.

I agree with *Ritzer* that a plaintiff need not show that he read and relied on a faulty SPD in order to prevent the enforcement of undisclosed plan terms. Permitting a plaintiff to prevail upon a showing either of detrimental reliance upon, or possible prejudice flowing from, a faulty SPD, also appears consistent with the approach taken by the majority of courts to have considered this issue. *See, e.g., Aiken,* 13 F.3d at 141–42; *Maxa,* 972 F.2d at 984; *Govoni,* 732 F.2d at 252. Moreover, as Judge Nickerson observed in *Ritzer,* such a rule furthers, rather than frustrates, Congress' purpose in enacting ERISA's disclosure requirements: "A rule requiring plaintiffs to prove detrimental reliance regardless of the nature of the inaccuracy in the summary plan description ... hardly advances the Congressional purpose of protecting the beneficiaries of ERISA plans by insuring that employees are fully and accurately apprised of their rights under the plan." 822 F.Supp. at 955–56.

▮ Applying this standard here reveals that plaintiffs were likely prejudiced by the SPD's failure to disclose the limitation on actions contained in the Plan. As noted, New York's six-year limitation on actions governs benefits claims under ERISA unless "a shorter time is prescribed by written agreement." N.Y. C.P.L.R. § 201. Because this limitation on actions is a statutory default rule, plaintiffs were entitled to rely on that rule until they knew, or had reason to know, this period had been curtailed by the Plan. Had the Fund adequately disclosed the two-year limitation to its participants via the SPD, it is likely that Austin Manginaro would have learned of this limitation from his employer, his co-workers, or the union, even if he never read the SPD himself.[7] *See Ritzer,* 822 F.Supp. at 955 ("While many employees may never in fact study summary plan descriptions, they are likely to learn of the provision as explained in the description

---

7. . Defendants could have rebutted this inference of prejudice by showing, *inter alia,* that plaintiffs were aware of the Plan's two-year limitation on actions before their benefits claims accrued in September 1992. *See Ritzer,* 822 F.Supp. at 956. No such showing has been made here.

through conversations with fellow employees and their employer.") Because plaintiffs were likely prejudiced by this omission, the six-year statute of limitations applies to plaintiffs' benefits claims, and as noted above, those claims were brought within that period.

## B. *Plaintiffs' Third and Fifth Claims Are Time–Barred*

] In contrast to their first, second, and fourth claims, plaintiffs' third and fifth claims alleging breaches of fiduciary duty are barred by the three-year statute of limitations that applies to those claims. ERISA provides as follows: ·

> No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, *or*
>
> (2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this title;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach of violation.

29 U.S.C. § 1113(a) (1994). This limitations period applies where, as here, plaintiffs assert breach of fiduciary duty claims pursuant to 29 U.S.C. § 1132(a)(3). *See Katsaros v. Cody,* 744 F.2d 270, 280 (2d Cir.1984); *Carollo v. Cement & Concrete Workers Dist. Council Pension Plan,* 964 F.Supp. 677, 687 (E.D.N.Y.1997).

Plaintiffs' third claim alleges that defendants breached their fiduciary duty to act "solely in the interest of the [Plan's] participants and beneficiaries," 29 U.S.C. § 1104(a)(1) (1994), and "in accordance with the documents and instruments governing

the plan." 29 U.S.C. § 1104(a)(1)(D). (Compl.¶ 36) Specifically, plaintiffs allege that defendants denied their benefits claims "to save money rather than [based upon] any determination that [Scott's nursing expenses] ... w[ere] not covered by the Fund or the Contract." *(Id.* ¶ 35) In their fifth claim, plaintiffs allege that defendants failed to conduct an internal review of ULLICO's decision in "accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), and as required by certain ERISA regulations relating to claims procedures. (Compl.¶ 39) As a remedy for these alleged breaches, plaintiffs seek to enforce the Plan according to its terms which they claim would entitle them to payment for Scott's nursing expenses, or, alternatively, to estop defendants from refusing to pay these expenses even if they were not in fact covered by the Plan.

These breach of fiduciary duty claims are untimely because plaintiffs had "actual knowledge of the breach[es] or violation[s]" alleged in these claims more than three years before they filed their complaint. 29 U.S.C. § 1113(a)(2); *see Leddy v. Long Island Trust Co., N.A.,* No. 83–CV–0870, 1987 WL 15317, at *1 (S.D.N.Y. Aug. 3, 1987). As noted, ULLICO denied coverage for plaintiffs' claims on September 9, 1992, and plaintiffs appealed that decision to ULLICO and the Fund by letter dated September 24, 1992. When defendants failed to respond, plaintiffs filed suit against ULLICO in state court on January 8, 1993. (ULLICO Rule 56.1 Statement ¶¶ 16–17) ULLICO continued to deny coverage for plaintiffs' claims, without explanation or further review, through December 31, 1994, the end of the Plan period. *(Id.* ¶ 20)

The allegations contained in plaintiffs' state-court complaint reveal that they had "actual knowledge" of the facts underlying the breach of fiduciary duty claims they seek to press here, at the very latest, in January 1993. That complaint alleges, *inter alia,* the following:

> [ULLICO's] refusal ... to comply with its obligations under respective contracts of insurance ... [is] arbitrary, capricious, and

a willful denial of the contract rights of the plaintiffs and an unauthorized, unlawful and improper rejection of the rights under the aforesaid insurance contracts or policies....

[ULLICO's] continual failure to provide adequate, proper or reasonable explanation as to the basis for the denial of such claims, demonstrated and continues to demonstrate bad faith and willful fraud on the plaintiffs....

[ULLICO] advised and informed the plaintiffs and plaintiffs' representatives herein, to institute and initiate an internal appeals process ... [and] has and continues to fail and refuse to comply with its own instructions, rules, and regulations and has, in addition, deliberately failed and refused to inform plaintiffs herein of any legitimate specific basis for its refusal to pay the benefits to which plaintiffs are entitled. [ULLICO's actions] are part of a deliberate and calculated scheme ... to divest plaintiffs and others of contractual rights and benefits under their respective policies and contracts of insurance and were committed with actual fraud and/or malice....

[ULLICO is] in violation of its own rules and regulations; the rules, regulations and procedures of the Insurance Department of the State of New York; and in violation of law and against the public policy of the State of New York.

(Pl.Ex. 21 ¶¶ 28–33) These allegations cover not only ULLICO's allegedly self-serving denial of plaintiffs' benefits claims but also its failure to conduct an internal review of that denial as required by ERISA and the Plan. Thus, plaintiffs' state-court complaint reveals that they were aware of the facts underlying these alleged breaches in January 1993.

Nor does it matter for statute of limitations purposes that ULLICO continued to deny payment for Scott's nursing expenses through December 31, 1994. Plaintiffs' breach of fiduciary duty claims accrued when they knew of the breaches or violations underlying those claims, i.e., when ULLICO denied coverage for Scott's nursing expenses—plaintiffs' third claim—and when ULLICO and the Fund failed to conduct an internal review of that denial as required by

ERISA and the Plan—their fifth claim. As noted, plaintiffs had actual knowledge of both events, at the very latest, in January 1993, when they filed the state-court lawsuit.

That plaintiffs continued to submit claims to ULLICO, and ULLICO continued to deny payment for them, through the end of the Plan period, does not also mean that plaintiffs' breach of fiduciary claims did not accrue until December 31, 1994. To hold otherwise would be to permit plaintiffs to extend the limitations period established by Congress "merely by requesting repeated reconsideration from the plan administrator or the insurer." Mitchell, 1997 WL 277381, at *6 (rejecting similar effort to extend accrual date for denial of benefits claims). Accordingly, and unless there are grounds for tolling the limitations period, plaintiffs' breach of fiduciary duty claims, raised for the first time in this court on July 24, 1996, are untimely.

■ Not surprisingly, given the similarities between plaintiffs' state-court complaint and the breach of fiduciary duty claims they seek to press here, plaintiffs argue that the filing of the state-court action tolled the statute of limitations on those claims. However, the Fourth Circuit recently considered and rejected this same argument in Shofer v. Hack, Co., 970 F.2d 1316, 1318 (4th Cir.1992). Shofer filed breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(3) more than three years after those claims accrued; however, he argued the limitations period on those claims was tolled by his filing of a prior action in Maryland state court asserting essentially identical claims under state law. Id. The Shofer Court disagreed noting that "commencement of an action in a clearly inappropriate forum, a court that lacks jurisdiction, will not toll the statute of limitations." Id. at 1319 (citing Silverberg v. Thomson McKinnon Sec., Inc., 787 F.2d 1079, 1082 (6th Cir.1986)). The Shofer Court reasoned that because § 1132(a)(3) claims are within the exclusive jurisdiction of the federal courts, see 29 U.S.C. § 1132(e)(1), Shofer's state court action did not toll the statute of limitations as to those claims. See Shofer, 970 F.2d at 1319; cf. Burnett v. New York Cent. R.R. Co., 380 U.S. 424, 429, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (holding

that statute of limitations on federal claims was tolled where plaintiff "brought an action within the statutory period in a state court of competent jurisdiction.")

Because I find the Fourth Circuit's reasoning in *Shofer* persuasive, I must also reject the tolling argument plaintiffs advance here. The Second Circuit recently adopted the *Shofer* Court's conclusion that breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(3) are within the exclusive jurisdiction of the federal courts. *See Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 714 (2d Cir.1993) (citing 29 U.S.C. § 1132(e)(1) and *Shofer*), *rev'd on other grounds*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). It follows from *Shofer* and the authorities cited therein, that the filing of plaintiffs' state-court action did not toll the limitations period on their ERISA claims for breach of fiduciary duty. *See Shofer*, 970 F.2d at 1319.

It bears mention that this result is hardly unfair to plaintiffs. Plaintiffs knew, or should have known, that the allegations they made in state court, if proved, stated claims for relief under ERISA. The SPD that Austin Manginaro received in July 1992 contains a comprehensive section entitled "Your Rights Under ERISA." (Pl.Ex. 6 at 22–23) It provides, *inter alia*, that "[i]f you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that the Plan fiduciaries misuse the Plan's money ... you may file suit in a federal court." (*Id.* at 23) Plaintiffs do not challenge the sufficiency of these disclosures; such language is deemed adequate by the applicable regulations. *See* 29 C.F.R. § 2520.102–3(t)(2).

■ As a result, the SPD put plaintiffs on notice that the conduct of which they complained in January 1993, if proved, was a violation of their rights under ERISA. Plaintiffs' failure to read the SPD does not alter this conclusion. Where, as here, the SPD's disclosures in this regard were adequate, plaintiffs may be charged with constructive notice of its contents. *See Howard v. Gleason Corp.*, 901 F.2d 1154, 1161 (2d Cir.1990) (holding that ERISA does not require individualized notice to participants as long as the SPD provided to them was adequate); *see also Electro–Mechanical Corp. v. Ogan*, 9 F.3d 445, 452 (6th Cir.1993) ("Absent a specific employee-initiated inquiry, however, a fiduciary is not obligated to seek out employees to ensure that they understand the plan's provisions as described in the explanatory booklet.")

Moreover, the SPD distinguishes between benefits claims that may be brought either in state or federal court and breach of fiduciary duty claims that may be brought only in federal court. (Pl.Ex. 6 at 23) Because the SPD properly disclosed this distinction to plaintiffs, they are charged with knowledge of it; their former attorneys certainly so. In any event, this distinction may be academic given that the relief plaintiffs seek on their breach of fiduciary duty claims—payment of Scott's nursing expenses—is the same relief to which they will be entitled if they prevail on their benefits claims. Those claims, as noted previously, were timely filed.

## C. *ULLICO's Counterclaims Are Not Time–Barred*

■ Turning the tables somewhat, plaintiffs argue that ULLICO's counterclaims are barred by the Plan's limitation on actions. As noted, ULLICO raises three counterclaims: the first and second seek reimbursement based on the Plan's subrogation provision, and the third seeks restitution on the theory that Scott's nursing services were not covered under the Plan and that ULLICO paid these claims in error. When measured against the applicable limitations periods, ULLICO's counterclaims are undoubtedly timely.

■ As was true of plaintiffs' benefits claims, ERISA does not establish a limitations period for ULLICO's counterclaims. As the Eighth Circuit recently noted, "ERISA does not specify a limitations period for a fiduciary's suit under 29 U.S.C. § 1132(a)(3) to enforce a reimbursement provision of a plan." *Blue Cross & Blue Shield of Alabama v. Sanders*, 138 F.3d 1347, 1356 (11th Cir.1998). Nor does the statute of limitations for breach of fiduciary duty claims contained in ERISA apply to ULLICO's

counterclaims. *See id.* at 1356 n. 8; *Trustees of Wyo. Laborers Health and Welfare Plan v. Morgen & Oswood Constr. Co., Inc. of Wyo.*, 850 F.2d 613, 618 n. 8 (10th Cir.1988) ("The statute of limitations contained in 29 U.S.C. § 1113 applies only to actions brought to redress a fiduciary's breach of its obligations to enforce the provisions of ERISA.") Because ERISA does not supply a limitations period, "a court must apply the limitations period of the state-law cause of action most analogous to the federal claim." *Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 333 (2d Cir.1997) (citations omitted). This requires the court to " 'characterize the essence' " of the federal claims at issue. *Id.* (quoting *Wilson v. Garcia*, 471 U.S. 261, 267–70, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)).

▆▆▆ ULLICO's first counterclaim seeks to enforce a contractual right to reimbursement for benefits paid to plaintiffs based on the Plan's subrogation clause. As such, the most analogous state-law claim is one for breach of contract. *See Blue Cross*, 138 F.3d at 1357 ("a fiduciary's action to enforce a reimbursement provision pursuant to 29 U.S.C. § 1132(a)(3) is most closely analogous to a simple contract action...."); *Wang Labs., Inc. v. Kagan*, 990 F.2d 1126, 1128 (9th Cir.1993) ("Wang's lawsuit is in substance for breach of contract, the contractual provision being Kagan's promise to reimburse medical expenses paid by Wang if Kagan recovered from a third party.") ULLICO's second and third counterclaims, although premised on different theories of recovery, are essentially claims for unjust enrichment. *See Rosner v. Codata Corp.*, 917 F.Supp. 1009, 1021 (S.D.N.Y.1996). In New York, unjust enrichment and breach of contract claims are both subject to a six-year statute of limitations. *See* N.Y. C.P.L.R. §§ 213(1), (2) (McKinney 1990). Because ULLICO began paying benefits to

plaintiffs on January 1, 1991, it had until January 1, 1997, to bring claims for reimbursement or restitution arising out of those payments. Because ULLICO's counterclaims were filed on November 20, 1996, they are undoubtedly timely.[8]

Plaintiffs' argument that the Plan's two-year limitation on actions applies to ULLICO's counterclaims is not supported by the Plan's language. The Plan's limitation, by its terms, only applies to claims brought by participants and beneficiaries. It provides, in full, as follows:

> No legal action can be brought until at least 60 days after written proof of loss is given to the Company [ULLICO]. No legal action can be brought more than two years after the date written proof of loss is required. This limitation, and the time permitted for filing the notice of claim and proof of loss, is extended to comply with the minimum requirement of the state in which the claimant resides at the time his insurance under this Contract [the Plan] is in effect.

(Pl.Ex. 8 at 41) Nothing in this provision suggests that it applies to claims brought by ULLICO. Indeed, the provision's "savings clause"—which extends the limitations period where required by the law of the state in which the "claimant" resides—confirms that it applies to claims brought by participants and beneficiaries, but not by ULLICO. As a result, New York's six-year statute of limitations applies to ULLICO's counterclaims, and therefore, they are timely.

### D. *Plaintiffs' Claims Against the Trustees in their Personal Capacities Must Be Dismissed*

▆▆▆▆ Plaintiffs' first, second, and fourth claims must be dismissed to the extent that they seek to hold the Trustees personal-

---

8. Because ULLICO's counterclaims are timely, I need not decide whether the filing of plaintiffs' complaint tolled the limitations period on these claims. In New York, the filing of a complaint tolls the statute of limitations on counterclaims that "arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends...." N.Y. C.P.L.R. § 203(c) (McKinney 1990); *see Aramony v. United Way of America*,

No. 96 Civ. 3962 (SAS), 1998 WL 205331, at *3 (S.D.N.Y. Apr. 27, 1998). Federal courts borrowing state statutes of limitations are also bound to apply any coordinate rules of tolling unless they are inconsistent with federal law or policy. *See Board of Regents, Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 484–485, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Leon v. Murphy*, 988 F.2d 303, 310 (2d Cir.1993).

ly liable for benefits allegedly due under the Plan. ERISA provides that:

> Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

29 U.S.C. § 1132(d)(2). Interpreting this provision, the Second Circuit has held that "[i]n recovery of benefits claims [under 29 U.S.C. § 1132(a)(1)(B)], only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir.1989) (citing *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir.1985) (per curiam)). Although a trustee can be sued in his official capacity, such suits are treated as suits against the plan. *See Barnett v. International Bus. Mach. Corp.*, 885 F.Supp. 581, 592 n. 15 (S.D.N.Y.1995). As a result, plaintiffs' first, second, and fourth claims, against the Trustees in their individual capacities, must be dismissed.

Plaintiffs resist this conclusion, arguing that the Trustees may be held personally liable if the Fund's assets prove insufficient to satisfy its liability to plaintiffs. However, plaintiffs cite no cases—and I am aware of none—standing for the proposition that a trustee may be held personally liable under any circumstances other than those specifically provided for by ERISA. Indeed, if trustees could be held personally liable to pay benefits claims whenever a plan's assets prove insufficient to satisfy a judgment against it, the protections afforded to trustees by 29 U.S.C. § 1132(d)(2) and *Leonelli* would be seriously eroded.

**E. Plaintiffs' Alleged Failure to Exhaust Administrative Remedies Does Not Bar Their Claims**

Defendants argue also that plaintiffs' benefits claims must be dismissed because plaintiffs failed to exhaust the administrative remedies provided by the Plan. *See Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993) (holding that ERISA requires claimants to ex-

haust administrative remedies before filing suit). If a plaintiff has failed to exhaust these remedies, the complaint must be dismissed unless he can make a "clear and positive showing that pursuing administrative remedies would be futile...." *Id.* (quotation omitted).

As noted, plaintiffs requested review of ULLICO's decision to deny coverage, and neither ULLICO nor the Fund responded to that request. This failure to respond forecloses defendants' argument that plaintiffs were required to exhaust the administrative remedies provided by the Plan before filing suit. I now turn to the central questions raised by the parties' motions.

**III.**

As noted, those questions are: 1) Does the Plan require defendants to pay for Scott's nursing expenses? and 2) Does the Plan require plaintiffs to reimburse ULLICO for expenses it has already paid on Scott's behalf? A logically prior issue, however, is whether ULLICO's answers to these questions are entitled to any deference here.

**A. Standard of Review**

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Although "magic words such as "discretion" and "deference" are not absolutely necessary," *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995) (quotation omitted), "a narrow view of when a plan document confers discretionary authority is needed to check the potential for biased decisions on the part of ERISA plan administrators." *Guisti v. General Elec. Co.*, 733 F.Supp. 141, 147 (N.D.N.Y.1990). The plan administrator bears the burden of proving that the "arbitrary and capricious" standard applies in a particular case. *See Kinstler v. First Reliance Standard Life Ins.*

*Co.*, No. 96 Civ. 0921 (PKL), 1997 WL 401813, at *6 (S.D.N.Y. July 16, 1997).

■ If a plan confers discretion to determine eligibility for benefits, a court may not upset this determination unless "the fiduciary's decision was arbitrary and capricious, that is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir.1995) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir.1995)). "Substantial evidence in turn is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Miller*, 72 F.3d at 1072 (quotation omitted). The question is "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Jordan*, 46 F.3d at 1271 (quotations omitted).

■ If a decision was arbitrary and capricious, the court should remand the matter to the fiduciary with instructions to consider additional evidence. *See Miller*, 72 F.3d at 1073–74; *Brentlinger v. E.I. DuPont de Nemours & Co.*, No. 94–CV–1339(RSP/GJD), 1997 WL 538911 (N.D.N.Y. Aug. 25, 1997) (Pooler, J.). Indeed, remand is the proper course where: "(1) the claimant sought in the district court to introduce evidence not previously considered by the fiduciary; and (2) the fiduciary had failed to consider the full administrative record before it." *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 51 n. 4 (2d Cir.1996). A court applying the arbitrary and capricious standard of review should not determine a claimant's eligibility for benefits itself unless it is convinced that remand would be "useless formality" because the fiduciary "would necessarily have to grant the claim...." *Miller*, 72 F.3d at 1072; *see Zuckerbrod*, 78 F.3d at 51 n. 4.

■ The first issue is what standard of review applies to plaintiffs' benefits claims, and therefore also to ULLICO's third counterclaim seeking reimbursement for benefit payments allegedly made to plaintiffs in error. Although the Plan does not grant UL-LICO broad discretion to interpret its terms or determine eligibility for benefits, it does give ULLICO and the Fund discretion to determine which services are "custodial care." Specifically, the Plan provides that "[t]he Contractholder [the Fund] together with the Company [ULLICO], its medical staff and/or an independent medical review determines which services are Custodial Care." (Pl.Ex. 8 at 4) Although this grant of discretionary authority undoubtedly could have been more explicit, *see, e.g., Pagan*, 52 F.3d at 441–42 (holding that plan granted discretion where it stated that third-party administrator "shall determine conclusively ... all questions arising in the administration of the Plan," "shall serve as the final review committee," and "retain such right, authority and discretion as is provided in or not expressly limited by [ERISA] ..."), the Second Circuit had held that language virtually identical to that at issue here is sufficient to trigger the more deferential standard of review. *See Zuckerbrod*, 78 F.3d at 48 (holding that plan language stating that if nursing care was "essential, in our judgment, for the treatment of a Covered Person's Injury or sickness" was sufficient to confer discretion on administrator).

Following *Zuckerbrod*, several courts in this District have predicated deferential review on similar plan language. *See Bennett v. Fortis Benefits Ins. Co.*, No. 97 Civ. 0346(JSM), 1998 WL 213199, at *2 (S.D.N.Y. Apr. 30, 1998) (holding that phrase "to decide our liability, we may require," repeated twice in the plan sufficient to confer discretion); *Glavan v. Building Serv. 32B–J Health Fund*, No. 96 Civ. 4145 (SHS), 1997 WL 381789, at *1 (S.D.N.Y. July 10, 1997) (finding discretion given based on plan language stating that "on the basis of medical evidence satisfactory to the Trustees" the trustees "shall determine total and permanent disability and of the entitlement to a Disability Pension hereunder ...."); *cf. Kinstler*, 1997 WL 401813, at *7 (holding that "isolated phrases, 'satisfactory proof,' and 'we consider,'" contained in the plan did not confer discretion).

Moreover, the passage quoted above is broad enough to give ULLICO and the Fund

discretion both to interpret the term "custodial care" and to determine whether certain services are in fact custodial. The Plan states that ULLICO, together with the Fund, "determines which services are Custodial Care." (Pl.Ex. 8 at 4) Although there is some disagreement among the federal courts over whether the *Firestone* test applies to cases where the denial of benefits is based on a factual determination by a plan administrator, as opposed to a question of plan interpretation, *see Pierre v. Connecticut Gen. Life Ins. Co.*, 502 U.S. 973, 973–74, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J., dissenting from denial of certiorari); *Orgeron v. Moran Towing Corp.*, 94 Civ. 7483, 1995 WL 708688, at *3 (S.D.N.Y. Nov. 30, 1995) (noting split of authority), and the Second Circuit has not yet addressed this issue, *see Sarosy v. Metropolitan Life Ins. Co.*, No. 94 Civ. 5431 (SHS), 1996 WL 426387, at *5 (S.D.N.Y. July 30, 1996) (noting lack of controlling authority), the majority of courts to have considered the question have held that *Firestone* applies to both types of denials. *See Sarosy*, 1996 WL 426387, at *7; *Dawes v. First Unum Life Ins. Co.*, 851 F.Supp. 118, 119–20 (S.D.N.Y. 1994); *Guisti*, 733 F.Supp. at 147–48; *see also Ramsey v. Hercules, Inc.*, 77 F.3d 199, 203 (7th Cir.1996); *Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1182 (3d Cir.1991). *But see Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1556 (5th Cir.1991) (holding that arbitrary and capricious standard of review applies to factual determinations whether plan confers discretion to make such findings or not); *Withey v. Metropolitan Life Ins. Co.*, Civ.A. Nos. 93–F–491, 93–F–552, 1994 WL 731584, at *4 (D.Colo. Mar. 7, 1994) (same).

Because I agree with the logic of *Sarosy, Dawes, Guisti,* and the other cases that give a broader reading to the Supreme Court's decision in *Firestone,* and in view of the Plan at issue here, I find that ULLICO's decision to deny coverage for Scott's nursing expenses, based in large part on its factual finding that the services provided to him were custodial in nature, is subject to the arbitrary-and-capricious standard of review. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

This review also limits the court to evidence that was available to ULLICO and the Fund at the time the decision to deny coverage was made. *See Miller,* 72 F.3d at 1071; *Maida v. Life Ins. Co. of N. Am.,* 949 F.Supp. 1087, 1091 (S.D.N.Y.1997).

By contrast, *de novo* review applies to ULLICO's first and second counterclaims seeking reimbursement or restitution based on the Plan's subrogation provision. Subrogation claims brought under ERISA are also subject to *de novo* review unless the plan confers discretion on the fiduciary to interpret the subrogation provision. *See Cagle v. Bruner,* 112 F.3d 1510, 1516 (11th Cir.1997) (applying the *Firestone* test to subrogation claims); *Sunbeam–Oster Co. Group Benefits-Plan v. Whitehurst,* 102 F.3d 1368, 1373 (5th Cir.1996) (same); *Barnes v. Independent Auto. Dealers Assoc. of Cal. Health and Welfare Benefit Plan,* 64 F.3d 1389, 1392 (9th Cir.1995) (same). As noted, although the Plan confers discretionary authority on ULLICO and the Fund to determine which services are "custodial care," nothing in the Plan gives ULLICO discretion to interpret the Plan's terms in general, or the subrogation clause in particular. As a result, ULLICO's claims for reimbursement or restitution from amounts plaintiffs have recovered in litigation against third parties is subject to *de novo* review. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948.

B. *ULLICO's Denial of Plaintiffs' Claims for Benefits Was Arbitrary and Capricious*

As noted, ULLICO's decision to deny coverage for Scott's nursing expenses is subject to the arbitrary-and-capricious standard of review. However, even when measured against this more deferential standard, ULLICO's decision was arbitrary and capricious because it is not supported by substantial evidence. According to the Plan, nursing services are custodial care if they: (1) "could be rendered safely and reasonably by a person not medically skilled"; and (2) "are de-

signed mainly to help the patient with daily living activities." [9] (Pl.Ex. 8 at 4).

Fiscina, the physician who made the decision to deny benefits on behalf of ULLICO, made factual findings with regard to both aspects of this definition. He determined that the nursing services being provided to Scott "could be rendered safely and reasonably by a person *not* medically skilled," and that they involved assisting him with "daily living activities" such as personal care, feeding, and acting as a companion. (Pl.Ex. 28 at 2) As noted, Fiscina did not examine Scott or speak to his treating physician. Rather, his findings were based solely on information contained in the medical advisor referral form and his review of the Notes taken by Scott's nurses.

However, the information Fiscina reviewed fails to provide substantial evidence for either finding. The medical advisor referral form contains only general information about Scott's condition and does not speak to the issue of whether Scott's nursing services constituted custodial care. For example, the form merely lists certain non-specific facts about Scott's condition, *e.g.*, that "diagnoses of 'burn unspecified' and 'unspecified condition of brain' were applicable," and that Scott was receiving, and was expected to continue to receive for life, full-time nursing care. (Pl.Ex. 26) It does not, however, support Fiscina's conclusion that Scott's nursing services were custodial care.[10]

Nor do the Notes provide substantial evidence for Fiscina's findings. Although the Notes reflect that Scott's nurses performed personal care and other services for him, they do not support either of Fiscina's broad conclusions that the nurses were present "mainly to help [him] ... with daily living activities," or that they only performed services that "could be rendered safely and reasonably by a person not medically skilled...." (Pl.Ex. 8 at 4) For example, the Notes reveal that on one occasion during the two-week period, Scott had a choking episode which required him to be suctioned twice by one of the nurses. (Pl. Rule 56.1 Statement ¶ 155; Pl.Ex. 14) The Notes do not describe the choking episode in detail and Fiscina does not even mention it in his report. (Pl. Ex. 28 at 2).

On deposition, Fiscina defended his conclusion that the services performed by Scott's nurses—including the suctioning—could have been done by someone not medically skilled. (Fiscina Dep. at .71) He characterized the choking episode as a "very minor event," and opined that whatever suctioning that was required could not have been very deep in Scott's throat because the Notes indicate also that Scott had an operative gag reflex. (*Id.* at 72–74)

Whether Fiscina's interpretation of the choking episode is correct is not the issue. The relevant inquiry is whether the Notes—standing alone—provide substantial evidence for Fiscina's findings of fact and the conclusions he draws from them. That question must be answered squarely in the negative. Indeed, Fiscina conceded on deposition that because the Notes do not describe the choking episode in detail, and because he did not seek additional information about it, he did not know either "the depth of the suction"

---

9. Although the SPD contains a different definition of custodial care, where, as here, the Plan is more favorable to plaintiffs, it is the Plan's terms that control. *See Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 542 (4th Cir.1992) ("Grace, having represented to its employees that the Plan—not the handbook—governed questions about benefits, cannot now repudiate this representation and rely on statements in the handbook that are less favorable to Mrs. Glocker."); *McGee v. Equicor–Equitable HCA Corp.*, 953 F.2d 1192 (10th Cir.1992).

10. If anything, the referral form supports the inference that Fiscina's conclusions may have been affected by ULLICO's interest in the outcome of his decision. That form advised Fiscina

that skilled nursing care was 100% covered by the Plan, that there was no limit on the amount ULLICO was obligated to pay for such care, and that ULLICO had already paid $263,082.90 to plaintiffs for Scott's nursing expenses. Whether this conflict affected the decision to deny coverage, *see Whitney v. Empire Blue Cross and Blue Shield*, 106 F.3d 475, 477 (2d Cir.1997) (holding that denial of benefits is arbitrary and capricious where plan fiduciary has conflict of interest that affects decision to deny benefits), is an issue that I need not decide—at least not at this stage in these proceedings—because that decision, even if accorded maximum deference, was not supported by substantial evidence. *See Zuckerbrod*, 78 F.3d at 49 (declining to reach conflict of interest issue under similar circumstances).

required or "what apparatus was used" to perform it. (*Id.* at 72–74) That Fiscina "didn't see the need" to request such information from Scott's nurses or his physician is even more curious in light of his further admission that certain types of suctioning do in fact require medical training. (*Id.* at 74)

Nor are the Notes substantial evidence for Fiscina's companion finding that Scott's nurses were present "mainly to help [him] ... with daily living activities." (Pl.Ex. 8 at 4) Although the Notes reflect that Scott's nurses performed daily living activities for him, that merely begs the question whether they were present "mainly" for that purpose. The Notes do not speak to this issue, and as noted, Fiscina did not examine Scott or consider the opinion of his treating physician before he denied coverage for plaintiffs' claims.

Had he done so, Fiscina would have discovered that Dimancescu, Scott's treating physician, prescribed 24–hour–a–day nursing care for Scott, beginning in 1981 and continuing at all relevant times, based on his belief that such care was required "to maintain a twenty four hour a day seizure watch, to be present to handle aspiration, to turn the patient every hour, to assure constant clearance of the airway, to provide skilled skin care to prevent decubitus ulceration, to administer medication, and to assist in physical therapy and neuro-rehabilitation." (Pl.Ex. 35 at 53) Fiscina should have considered Dimancescu's opinions before denying coverage for Scott's nursing expenses.

I am unable to imagine how the Notes, which merely reflect the activities of Scott's nurses during a two-week period, can fairly be said to provide a representative picture of the type of medical care required by a burn victim who has been a quadriplegic for more than 15 years. Because Fiscina failed to consider other evidence, and because the evidence he did consider does not support his conclusions, his decision denying coverage for Scott's nursing expenses was arbitrary and capricious. *See Miller*, 72 F.3d at 1072 (holding that "reliance on such limited information to deny the claim was arbitrary and capricious" where decisionmaker failed to include or explain all of the items in the ad-

ministrative record, each of which "either buttressed [claimant's] position or was neutral."); *Brentlinger*, 1997 WL 538911, at *2–3 (finding denial of coverage for nursing care was arbitrary and capricious where insurer relied solely on nurses' notes and thus acted without a "full[ ] aware[ness] of Brentlinger's physical condition or the exact nature of the services he was being provided.") It follows that ULLICO's subsequent denials of plaintiffs' claims for nursing expenses incurred after June 27, 1992, rendered seriatim and without further fact-finding or review, were also arbitrary and capricious.

■■■ The unreasonableness of these decisions is suggested also by defendants' failure to afford plaintiffs "a meaningful opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2) (1994). As noted, the Plan requires ULLICO and the Fund to determine "together" which services are custodial care. (Pl.Ex. 8 at 4) However, neither ULLICO nor the Fund responded to plaintiff's request for review of ULLICO's decision. Had either reviewed Fiscina's conclusions, which they were required to do both by ERISA and by the Plan, they would have discovered that his findings were not based on a consideration of "any and all pertinent information reasonably available" to him including "evidence presented by both parties." *Crocco v. Xerox Corp.*, 956 F.Supp. 129, 139 (D.Conn.1997) (quotations omitted), *aff'd in part, rev'd in part on other grounds*, 137 F.3d 105 (2d Cir.1998). Because there was no review, plaintiffs did not have an opportunity to present the evidence they seek to introduce here, most notably the opinions of Dimancescu and others concerning the reasons for Scott's 24–hour–a–day nursing care and the nature of the services being provided to him.

The Fund's failure even to inquire into the basis for Fiscina's findings before acquiescing in ULLICO's denial of coverage is particularly troubling. When ULLICO denied coverage for plaintiffs' claims in September 1992, the Fund already had several documents in its possession relating to Scott's condition, including the letter from Dimancescu referenced above. This letter, and oth-

ers like it, should have "raise[d] questions" about the correctness of Fiscina's findings that the Fund should have "clarified prior to rendering a final decision" on plaintiffs' claims. *Crocco,* 956 F.Supp. at 141. At a minimum, the Fund should have afforded plaintiffs an opportunity to contest these findings before merely adopting ULLICO's conclusion that Scott's nursing services were not covered by the Plan.

■ The Fund's conduct is even more dubious when one considers that plaintiffs had been reimbursed in full for Scott's nursing expenses through the Fund for more than ten years before ULLICO denied coverage for these claims. Indeed, even ULLICO paid these claims for a year and a half before it denied coverage. Of course, that ULLICO or the Fund's prior insurers paid benefits to plaintiffs in the past does not mean that defendants should be estopped from denying coverage for the same type of expenses. *See Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (holding that estoppel in the payment of benefits under ERISA arises only under "extraordinary circumstances"); *Birns v. AFTRA Health Fund,* No. 94 Civ. 8563(RJW), 1997 WL 328079 (S.D.N.Y. June 16, 1997) (finding that "[t]he Fund's own prior course of conduct is not, however, equivalent to a material representation" required to state a claim for estoppel). However, plaintiffs did have reason to expect that the Fund would not permit ULLICO to deny coverage for Scott's nursing expenses based on a skimpy factual record.

Because ULLICO's denial was arbitrary and capricious, a part of plaintiffs' benefits claims are remanded to ULLICO and the Fund for consideration of additional evidence. Defendants are directed to consider on remand Dimancescu's opinions regarding the reason for Scott's nursing services, the type of services actually being provided to him, and any other relevant evidence plaintiffs wish to submit. *See English v. Metropolitan Life Ins. Co.,* No. 94 CV 3155, 1996 WL 281530, at *3 (E.D.N.Y. May 22, 1996) (finding that denial of coverage for private

nursing care was supported by substantial evidence where insurer considered, *inter alia,* the opinions of claimant's treating physicians and her nurses, the nurses' notes, and claimant's medical records). The court will retain jurisdiction over this case pending defendants' decision on remand. *See Maida,* 949 F.Supp. at 1094.[11]

C. *Plaintiffs' Benefits Claims Are Partially Offset by the Plan's Subrogation Provision*

■ However, the remand of plaintiffs' benefits claims to ULLICO and the Fund does not also mean that they will be able to recover in full on these claims. ULLICO argues that plaintiffs cannot recover because any recovery would be fully offset by ULLICO's right to recover from plaintiffs under the Plan's subrogation provision. Indeed, ULLICO argues that this provision entitles it to recover any and all benefits it has already paid to plaintiffs under the Plan. Although plaintiffs' benefits claims are partially offset by the Plan's subrogation provision, ULLICO is not entitled to reimbursement for any benefits it has already paid to plaintiffs because defendants failed to give them proper notice of that provision.

■ As noted, ULLICO's claims regarding subrogation are subject to *de novo* review. However, "[a]s with many other substantive terms of welfare plans, ERISA says nothing about subrogation provisions. ERISA neither requires a welfare plan to contain a subrogation clause nor does it bar such clauses or otherwise regulate their content." *Ryan v. Federal Express Corp.,* 78 F.3d 123, 127 (3d Cir.1996) (citing *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Health and Welfare Fund,* 25 F.3d 509, 514 (7th Cir.1994)). As a result, courts look to the express language of the plan or the SPD, as the case may be, to determine whether a plan or its insurer is entitled to be reimbursed by participants or beneficiaries from amounts they receive from other sources. *See U.S. Healthcare, Inc. (N.Y.), v. O'Brien,* 868

---

11. Unless, of course, the Court of Appeals takes jurisdiction in the interim in connection with a properly filed appeal. *See Crocco,* 137 F.3d at

109 (declining to decide whether remand to plan fiduciary is a final appealable order under 28 U.S.C. § 1291 (1994)).

F.Supp. 607, 611 (S.D.N.Y.1994) ("the terms of the particular plan involved control the resolution of the case") (quotation omitted); *see also Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir.1997); *Bollman Hat Co. v. Root*, 112 F.3d 113, 118 (3d Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 373, 139 L.Ed.2d 290 (1997); *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1298–99 (7th Cir.1993) (Posner, J.).

Here, the SPD contains a broad subrogation provision. It informs participants that the Fund is entitled "to be repaid from benefits you recover from a third party," and in a later passage, to be reimbursed for "any benefit payments you receive out of the money you recover from the third party." (Pl. Ex. 6 at 21) Courts have interpreted similar provisions to permit a plan or insurer to assert broad claims for reimbursement. *See Sargeant v. Local 478 Health Benefits & Ins. Fund*, 746 F.Supp. 241, 246 (D.Conn.1990); *see also Root*, 112 F.3d at 116; *Ryan*, 78 F.3d at 124; *McIntosh v. Pacific Holding Co.*, 992 F.2d 882, 885 (8th Cir.1993).

To date, plaintiffs have recovered approximately $3.5 million as the result of litigation against the toy store and the hospital. Pursuant to the SPD's terms, ULLICO can claim an entitlement to reimbursement from plaintiffs "out of the money [they] recover[ed] from the third part[ies]"—*i.e.* the amount they received after deducting a reasonable sum for attorneys' fees and court costs. Although the parties dispute the exact amount of plaintiffs' net recovery, there can be no dispute that plaintiffs received far more than $472,035.00, the amount they seek to recover from ULLICO on the unpaid claims, or $399,285.60, the amount it seeks to recover from them on the counterclaims. Thus, if the subrogation provision is enforceable to the extent sought by ULLICO, it will be entitled to full recovery on its counterclaims, and ULLICO's potential liability to plaintiffs on the unpaid claims will be fully offset by its right to recover that same amount from plaintiffs if it has to pay those claims.

However, the subrogation provision is not enforceable to the extent sought by ULLICO because plaintiffs had no reason to know of this provision until July 21, 1992, the date the Fund distributed the SPD to Austin Manginaro. As noted, the Plan itself was never given to plaintiffs, and the 1984 SPD relating to the Aetna plan had no subrogation clause. Because defendants failed to disclose the subrogation provision before July 21, 1992, ULLICO may not enforce this provision against plaintiffs with respect to payments made prior to that date. *See James*, 947 F.Supp. at 628 (holding that courts will not enforce a benefit forfeiture provision that was not disclosed to participants); *Gaides*, 1996 WL 497085, at *4–5 (same); *see also Germany v. Operating Engineers Trust Fund of Washington, D.C.*, 789 F.Supp. 1165, 1172 (D.D.C.1992) ("Because the subrogation agreement the Fund seeks to enforce was neither filed with Secretary of Labor nor disclosed to plan participants, the Fund cannot enforce its terms ...."); *cf. Member Servs. Life Ins. Co. v. American Nat'l Bank and Trust Co. of Sapulpa*, 130 F.3d 950, 957 (10th Cir.1997) (holding that plan amendment broadening subrogation rights could not be applied retroactively to recover benefits previously paid to participants because they had no notice of the change), *cert. denied*, — U.S. —, 118 S.Ct. 1843, 140 L.Ed.2d 1093 (1998). Contrast this case with those in which the claimant had actual or constructive notice of the plan or insurer's subrogation rights before accepting the benefits at issue. *See Cagle*, 112 F.3d at 1519 (noting that claimant was required to sign a subrogation agreement before benefits were paid to him); *Root*, 112 F.3d at 115 (same); *Sunbeam-Oster*, 102 F.3d at 1371 (observing that subrogation was properly disclosed to claimant via the SPD); *Ryan*, 78 F.3d at 125 (same); *Harris Trust*, 57 F.3d at 608 (subrogation agreement); *Cutting*, 993 F.2d at 1295 (same); *Waller*, 906 F.2d at 994 (same).

This conclusion, although predicated on principles of fair notice, is reinforced by the express language of the subrogation provision contained in the SPD. That provision states that "[i]f you or a dependent receive [*sic*] benefit payments from the [Fund] ... the Fund has the right to collect payment from the third party or to be repaid from benefits you receive from the third party."

(Pl.Ex. 6 at 20–21) It provides also that "[w]hen you or your dependents file for benefits under these circumstances, you agree to reimburse the Fund for any benefit payments you receive out of the money you recover from the third party." (*Id.* at 21) As this language makes plain, ULLICO's right to subrogation cannot be applied retroactively; it arises only after ULLICO makes payment to a participant. *See Barnes,* 64 F.3d at 1393 (interpreting "if this Plan makes payment ... this Plan is subrogated to all rights of recovery to the extent of this payment" to mean that "the Plan's right to subrogation arises only after the Plan makes payment to the insured.").

Two conclusions flow from this observation. First, ULLICO's first and second counterclaims must be dismissed. As noted, these counterclaims seek reimbursement for $399,285.60, the amount ULLICO paid to plaintiffs for Scott's nursing expenses from January 1, 1991, through June 13, 1992. However, because ULLICO made these payments prior to July 21, 1992, that is, prior to the effective date of the subrogation provision, and made no payments after that date, it has no right to seek reimbursement for its payments to plaintiffs.

▆▆▆▆ Nor can ULLICO recover for these payments on the theory that plaintiffs will have been unjustly enriched if ULLICO is denied subrogation rights. Restitution is only available under ERISA if a claimant "wrongfully secured a benefit, or had passively received one which it would be unconscionable for him to retain." *Geller v. County Line Auto. Sales, Inc.,* 86 F.3d 18, 22 (2d Cir.1996) (citing 29 U.S.C. § 1132(a)(3)); *see also Harris Trust,* 57 F.3d at 615. That plaintiffs accepted benefits under the Plan based upon their good faith belief that they were entitled to such benefits cannot be characterized as wrongful. Nor would it be unconscionable for them to retain those payments on the ground that, as ULLICO alleges, plaintiffs have recovered twice for Scott's nursing expenses. Indeed, ULLICO's double-recovery argument is foreclosed by the fact that plaintiffs' settlement with the toy store was not allocated to Scott's medical expenses, and although the judgment against

the hospital represented compensation for his "future unreimbursed medical expenses," *Manginaro,* 221 A.D.2d at 605, 634 N.Y.S.2d at 183, there is no evidence in the record to suggest that Scott's only unreimbursed medical expenses are nursing services. Accordingly, ULLICO's first and second counterclaims are dismissed.

Second, plaintiffs' claims for benefits allegedly due after July 21, 1992, are fully offset by ULLICO's right to recover from plaintiffs under the subrogation provision. As noted, plaintiffs seek to recover $472,035.00, the amount of the unpaid claims from June 14, 1992, through December 31, 1994. However, even if, as plaintiffs allege, Scott's nursing expenses during this period were covered by the Plan, and thus ULLICO were obligated to pay these claims, ULLICO would be entitled under the subrogation provision to seek reimbursement from plaintiffs in that same amount and for the same claims. In other words, plaintiffs' net recovery would be zero because ULLICO would be entitled to reimbursement for the same claims it would be obligated to pay to plaintiffs. Because determining whether plaintiffs are entitled to recover on their claims for benefits allegedly due after July 21, 1992, would be a futile exercise, those claims must be dismissed. *See Leonelli,* 887 F.2d at 1198–99 (holding that claimant's attempt to press benefits claims was futile because benefits allegedly due under the plan would be offset completely by amounts he already received from third-party sources); *Sargeant,* 746 F.Supp. at 247 (finding that claim for future medical expenses was barred by plan's subrogation clause).

Moreover, because the subrogation provision at issue requires plaintiffs to reimburse ULLICO "out of the money [they] recover[ed]" from litigation with third parties, and does not otherwise qualify ULLICO's subrogation rights, ULLICO would be entitled to reimbursement from plaintiffs for any benefit payments it might have to make to them regardless of how or whether plaintiffs' recovery from the third parties was allocated. *See Sargeant,* 746 F.Supp. at 246; *see also Waller,* 120 F.3d at 138; *Root,* 112 F.3d at 117; *Sunbeam–Oster Co.,* 102 F.3d at 1376;

*Cutting,* 993 F.2d at 1299; *McIntosh,* 992 F.2d at 885; *cf. U.S. Healthcare,* 868 F.Supp. at 611 (holding that insurer's subrogation right limited where plan provided for reimbursement "only when the amount received by a member is: (i) for hospital, medical, or surgical services; and (ii) only to the extent that those services were provided by [insurer]"). Nor would it be unjust for UL-LICO to assert subrogation rights under such circumstances. *See Cummings v. Briggs & Stratton Retirement Plan,* 797 F.2d 383, 390 (7th Cir.1986) ("Enrichment is not 'unjust' where is it allowed by the express terms of the pension plan.") Accordingly, plaintiffs' claims for benefits allegedly due after July 21, 1992, are dismissed.

\* \* \* \* \* \*

For the reasons stated above, plaintiffs' motion for summary judgment is granted as to ULLICO's first and second counterclaims, and is denied in all other respects. Defendants' summary judgment motions are granted as to: 1) plaintiffs' first, second, and fourth claims for benefits allegedly due after July 21, 1992; and, 2) plaintiffs' third and fifth claims for breach of fiduciary duty in their entirety. The Trustees' motion to dismiss plaintiffs' claims against them in their individual capacities is granted. The parties' summary judgment motions are denied in all other respects.

Plaintiffs' first, second, and fourth claims for benefits allegedly due on or before July 21, 1992, are remanded to ULLICO and the Fund for consideration of additional evidence consistent with this opinion. Defendants are also directed to consider evidence relating to ULLICO's third counterclaim, if ULLICO actually intends to press it in this court, alleging that the nursing services provided to Scott prior to June 14, 1992, were not covered by the Plan. Defendants are cautioned, however, that plaintiffs must be "afford[ed] a meaningful opportunity . . . for a full and fair review" before coverage for Scott's nursing expenses is denied for either period. 29 U.S.C. § 1133(2).

The parties are directed to report by letter on the status of the remand by November 27, 1998. Pending further order, this case is placed on the suspense docket.